[No. A134700. First Dist., Div. Five. Feb. 27, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
BEJAN ESMAILI, Defendant and Appellant.

---

---

COUNSEL

Andrew J. Dhuey for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R,. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**NEEDHAM, J.**—Appellant Bejan Esmaili was charged with continuous sexual abuse of a child in violation of Penal Code section 288.5.[1] A preliminary hearing was held at which the magistrate, citing inconsistencies in the victim's testimony, found the evidence insufficient to bind appellant over for trial and dismissed the complaint. Appellant petitioned the court for a determination of factual innocence under section 851.8, subdivision (c). After the court denied the petition, appellant filed an unsuccessful motion for reconsideration, arguing that principles of collateral estoppel required the court to find him factually innocent. We affirm the orders denying the petition under section 851.8 and the motion for reconsideration.

### BACKGROUND AND PROCEDURAL HISTORY

#### A. *Evidence at the Preliminary Hearing*

The prosecution filed a felony complaint charging appellant with a single violation of section 288.5, subdivision (a), which provides, "Any person who . . . has recurring access to [a] child, who over a period of time, not less than three months in duration, engages in . . . three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." Jane Doe, the alleged victim, was the primary witness at the preliminary hearing on this charge, which was held over several sessions in 2011.

Doe was born in January 1996 and was 15 years old when she testified in this case. When she was in the second grade, her family moved next door to appellant and his family, and Doe often went over to appellant's house to

---

[1] Statutory references are to the Penal Code.

play with his two children. Doe testified that appellant touched her inappropriately on four occasions when his wife was not home.

According to Doe, the first inappropriate touching occurred during the summer of 2004 between her second and third grade years, meaning that Doe would have been eight years old. She and appellant were sitting on the couch in appellant's living room watching a movie while his daughter sat on the floor and his son sat on a chair. Doe complained about her back hurting, because she had fallen against a railing earlier and had hit her shoulder. Appellant offered to give her a massage and Doe agreed. After a while, however, appellant lifted her shirt and eventually moved his hand to her stomach and toward her "breasts." Doe thought this was "weird" and moved his hands away. She moved away from him and watched the rest of the movie.

The second incident described by Doe also occurred during the summer of 2004. Doe claimed that while watching a movie with appellant and his children, he offered to give her a massage and moved Doe to his lap when she agreed. Appellant massaged her lower back and stomach before moving on to her "breasts," but Doe would not allow appellant to put his hands in her pants. Doe left the room saying she had to get a glass of water and sat down with the other children upon her return to the room.

Doe testified to a third touching that probably occurred the following summer. She was watching a movie with appellant and his children when he offered her a massage and she agreed. At some point during the massage appellant moved his hands near her "breasts" and went down her skirt, hooking his finger into the top of her underwear. Doe got up to go to the bathroom and then returned to watch the movie. She felt that appellant had an erection when he was touching her.

The fourth touching described by Doe occurred during the summer following the third incident. She was again at appellant's home watching a movie with him and his children when appellant picked her up and moved her to his lap. He started to rub her lower back, then moved his hands to her stomach and "breasts" and under her skirt. He also placed his whole hand inside her underwear and touched her inner thigh. Doe claimed that she felt an erection during this incident as well.

Doe did not tell anyone about these incidents for several years, but continued to have contact with appellant and his family. She testified that she realized what had happened after watching a couple of episodes of the television show *Law & Order*. In 2010, when she was 14, she told her good friend S.H. that she had been molested by a neighbor. S.H. encouraged Doe

to tell someone, and Doe spoke to her therapist. Detective Bettencourt of the Albany Police Department interviewed Doe. Doe also spoke to social worker Erin Harper of CALICO (the Child Abuse Listening, Interviewing and Coordination Center).

Doe did not disclose certain details to Detective Bettencourt or Erin Harper that she testified to at the preliminary hearing, including her claim that appellant had erections during two of the incidents. Doe acknowledged that the prosecutor in the case was the first person she had told about the erections. Doe initially told the prosecutor that she felt erections on all four occasions rather than on the two she testified to at the preliminary hearing.

S.H. testified that when Doe told her about the molestations, she said it had happened twice, that on the first occasion appellant had touched her all over, and that on the second occasion he had told her to go into his room and sit down on his bed.

The prosecution played tape recordings of two pretext telephone calls that Doe made to appellant at Detective Bettencourt's direction. During the calls, Doe repeatedly confronted appellant about touching her inappropriately when she was younger, and he repeatedly claimed not to know what she was talking about. He apologized to her many times for making her feel uncomfortable, but said he never did anything intentionally. At one point when Doe suggested she might go to the police, appellant offered to use his contacts to help her get into college. When Doe asked him during the second pretext call what he would do if someone touched his daughter, he said he would probably tell her to "focus on what's important in moving forward what's going to be positive for you, which is your school, your family, and . . . being healthy and taking care of yourself." Appellant suggested several times that he and Doe meet somewhere to discuss the issue, but she refused.

Other evidence showed that appellant did not tell his wife about Doe's accusations until he was arrested.

### B. *Order at the Preliminary Hearing*

The magistrate found the evidence at the preliminary hearing did not provide sufficient cause to bind appellant over for trial, noting that he was "troubled very much" about Jane Doe's credibility: "I'm not saying she's deliberately lying, but I do feel that a lot of details of this incident are confused in her mind, and I'm not quite sure if that's because she believes that it happened that way, and she's again recounting history six or seven years later as opposed to out and out, you know, false accusations."

In support of its ruling, the magistrate noted the following concerns: (1) Doe told S.H., the first person she confided in, that the molestations had

happened only twice, and she described those incidents differently to S.H. than she did at the preliminary hearing; (2) Doe did not mention that appellant had an erection during any of the incidents until she spoke with the prosecutor, and she initially told the prosecutor she felt erections during all four incidents, contrary to her testimony at the preliminary hearing; (3) when defense counsel attempted to show Doe documents to refresh her recollection during cross-examination, Doe would categorically state that the documents would not refresh her recollection and would refuse to look at them; (4) Doe acted bored during one session of the preliminary hearing, in a manner inconsistent with someone who had been a victim; (5) it seemed improbable that appellant's children could have been in the same room as Doe and appellant during the extended touchings she described without noticing something; (6) Doe did not seem able to remember what she had testified to during earlier sessions of the preliminary hearing, even though she claimed to remember molestations that occurred six or seven years ago; and (7) appellant did not admit guilt during the pretext telephone calls and seemed genuinely bewildered. The magistrate found it "troubling" that appellant had not told his wife about Doe's accusations and had offered to help Doe get into college in response to those accusations.

The magistrate ordered appellant discharged and bail exonerated. The People did not refile charges against appellant.

### C. Petition for Determination of Factual Innocence

After the charge against him was dismissed, appellant filed a petition for a determination of factual innocence under section 851.8, subdivision (c), which was heard by the same judge who had sat as the magistrate at the preliminary hearing. The parties agreed that to demonstrate factual innocence, appellant bore the initial burden of showing that "no reasonable cause exists to believe that [appellant] committed the offense for which the arrest was made." Appellant argued that because the court had found there was no probable cause to hold him to answer at the preliminary hearing, there was no "reasonable cause" within the meaning of section 851.8 to believe he had committed the charged offense. The prosecution disagreed, arguing that the standard for demonstrating factual innocence under section 851.8 was more demanding than the standard for holding a defendant to answer after a preliminary hearing.

The court denied the petition: "I would certainly agree that the burden [of demonstrating factual innocence] is incredibly high, because it's not just whether there's a reasonable doubt that [appellant] committed the crime, but that there is no doubt whatsoever, and you take the language [in section 851.8], 'no reasonable cause exists,' and you redefine it by turning it into its

opposite. Its opposite is that 'any reasonable cause exists,' and if any reasonable cause exists to believe that he committed the crime, then, essentially, he's not entitled to the relief. [¶] And although I did hear the evidence in this case, as I indicated to you, I only heard what the Prosecution put on for purposes of establishing a reasonable suspicion. I didn't get all the evidence. But what I heard—okay?—didn't convince me that he was innocent. What I heard convinced me that we had a case that was going to be difficult for the Prosecution to prove, a complaining witness that did have inconsistencies in her testimony, but I never found her to be an out and out liar or that what she said wasn't true. My assessment of the evidence was that it was going to be very, very difficult for the Prosecution to obtain a conviction based on that evidence. [¶] And under the circumstances, given what was presented to me, there wasn't enough to hold him to answer. But nothing in that testimony convinced me that this was a case in which the defendant was falsely accused. It was really a case that had a lot of problems on the Prosecution's end of it, possibly because of the way in which the police handled the complaining witness and some of the way[s] the investigator handled some of the witnesses. It was essentially a simple two-count case into a four-count case, but if the standard is 'no reasonable cause,' . . . I don't think the state of the evidence is such that I can find no reasonable cause to believe that he had committed the crime. [¶] There's something there. And so I think it's more along the lines of reasonable doubt, and . . . where the judge makes the finding, finding that there's doubt, that shouldn't be the basis on which to grant this relief. The judge has to be convinced that, in fact, the defendant is innocent. And I can't say that I'm in that state of mind. So I will deny the [petition]."

### D. *Motion for Reconsideration and Appeal*

After his petition under section 851.8 was denied, appellant filed a motion for reconsideration arguing that (1) the court should revisit its denial of that petition based on the arguments previously made and (2) the finding of no probable cause at the preliminary hearing had collateral estoppel effect and required a finding of factual innocence. The court denied the motion, finding that collateral estoppel did not apply and that there had been no changed circumstances or new evidence requiring the court to grant the petition.

Appellant filed timely appeals from the orders denying his petition for a determination of factual innocence and his petition for reconsideration.

### STANDARD OF REVIEW

In an appeal from a trial court's order on a petition for a determination of factual innocence under section 851.8, we defer to the trial court's factual

findings to the extent they are supported by substantial evidence, but independently review the record to determine whether the defendant sustained his burden of showing that no reasonable cause exists to believe he or she committed the charged offense. (*People v. Adair* (2003) 29 Cal.4th 895, 897, 906 [129 Cal.Rptr.2d 799, 62 P.3d 45] (*Adair*); *People v. Bleich* (2009) 178 Cal.App.4th 292, 300 [100 Cal.Rptr.3d 288] (*Bleich*).)

## DISCUSSION

### I.

Appellant argues that the trial court applied too rigorous a standard to his petition for a determination of factual innocence. We disagree.

Section 851.8, subdivision (c) provides in relevant part, "In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest is made. . . . The hearing shall be conducted as provided in subdivision (b). If the court finds the petitioner to be factually innocent of the charges for which the arrest was made, then the court shall grant the relief as provided in subdivision (b)." Under section 851.8, subdivision (b), a finding of factual innocence "shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. *In any court hearing to determine the factual innocence of a party, the initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made.* If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense for which the arrest was made." (Italics added.)

" ' "Reasonable cause" ' " under section 851.8 has been defined as " ' "that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' " (*Adair, supra*, 29 Cal.4th at p. 904; *People v. Laiwala* (2006) 143 Cal.App.4th 1065, 1069 [49 Cal.Rptr.3d 639] (*Laiwala*).) To be entitled to relief under section 851.8, " '[t]he arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person . . . is guilty of the crimes charged. [Citation.]' " (*Adair*, at p. 904.)

■ Appellant suggests that the trial court applied the wrong legal standard because it described the burden under section 851.8 as "incredibly high" and suggested it was necessary to find not just reasonable doubt of appellant's guilt, but "no doubt whatsoever." We find no error, because the court's characterization of the standard was apt. " ' "[F]actually innocent" as used in [section 851.8(b)] does not mean a lack of proof of guilt beyond a reasonable doubt or even by "a preponderance of evidence." [Citation.]' [Citation.] Defendants must 'show that the state should never have subjected them to the compulsion of the criminal law—because no objective factors justified official action . . . .' [Citation.] *In sum, the record must exonerate, not merely raise a substantial question as to guilt.* [Citation.]" (*Adair, supra,* 29 Cal.4th at p. 909, italics added.)

Even if we were to assume the court's reference to "no doubt whatsoever" slightly overstated appellant's burden under section 851.8, we would not reverse. That comment was but a snippet in a lengthy oral ruling in which the court recited the correct standard of "no reasonable cause" and explained that it simply was not convinced appellant was innocent as a factual matter. It is not reasonably probable the court would reach a different result on remand. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

II.

Appellant submits that the standard for discharging a defendant at the preliminary hearing is the legal equivalent of the standard used when determining factual innocence. He argues that as a consequence, the order discharging him operated as a finding of factual innocence under section 851.8. Again we disagree.

■ The purpose of a preliminary hearing is to determine whether a defendant charged with a felony by criminal complaint should be held for trial. (See *Correa v. Superior Court* (2002) 27 Cal.4th 444, 452 [117 Cal.Rptr.2d 27, 40 P.3d 739].) The defendant will be bound over and held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty." (§ 872, subd. (a).) Conversely, the magistrate must order the complaint dismissed when "it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense . . . ." (§ 871.) "The term 'sufficient cause' [as used in sections 871 and 872] is generally equivalent to 'reasonable and probable cause,' that is, such a state of facts as would lead a man of ordinary caution

or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609] (*Uhlemann*).)

■ The definition of "probable cause" for purposes of a preliminary hearing appears to mirror the definition of "reasonable cause" for purposes of a factual innocence petition under section 851.8. But it does not follow that an order discharging a defendant for lack of probable cause means factual innocence has been demonstrated. At the preliminary hearing, the burden is on the prosecution to show there is probable cause to believe the defendant committed the charged offense. (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1041 [13 Cal.Rptr.2d 551, 839 P.2d 1059].) When bringing a petition under section 851.8, the defendant has the initial burden of showing the converse—that there is no reasonable cause to believe he committed the offense. (§ 851.8, subd. (b); *Laiwala, supra*, 143 Cal.App.4th at p. 1068.) The magistrate may determine that the prosecution has fallen short of carrying its burden at the preliminary hearing, but that failure of proof does not mean that the defendant has automatically carried his initial burden of demonstrating his factual innocence.

■ " 'Establishing factual innocence . . . entails establishing as a prima facie matter not necessarily just that the [defendant] had a viable substantive defense to the crime charged, but more fundamentally that there was *no reasonable cause* to arrest him in the first place.' " (*Adair, supra*, 29 Cal.4th at p. 905, italics added.) This is "an objective question measured by an external standard—would 'no person of ordinary care and prudence . . . believe or conscientiously entertain any honest and strong suspicion that the [defendant] is guilty of the crimes charged'?" (*Id.* at p. 906.) "In other words, the trial court cannot grant relief if *any* reasonable cause" warrants a belief in the defendant's guilt. (*Id.* at p. 904.)

■ In determining whether probable cause exists at the preliminary hearing, the magistrate may "weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses." (*Uhlemann, supra*, 9 Cal.3d at p. 667.) In cases where the facts presented by the prosecution do not establish probable cause to the magistrate's satisfaction, based on that magistrate's resolution of evidentiary conflicts or assessment of witness credibility, it still might be the case that another person of ordinary care and prudence could view the evidence differently and have some suspicion of the defendant's guilt. Thus, a defendant may be unable to carry his burden of showing there was no reasonable cause to arrest him, even though the magistrate found that the prosecution failed to carry its burden of showing probable cause to bind the case over.

■ Although it does not involve a petition under section 851.8, the decision in *Uhlemann, supra,* 9 Cal.3d 662 is instructive. There, the magistrate dismissed a complaint charging the defendant with marijuana sales after determining that a key witness was lying and that the defendant had been entrapped. (*Id.* at pp. 664–665.) The People then obtained a grand jury indictment charging the defendant with the same offense, and appellant was convicted following a jury trial. (*Id.* at p. 664.) The superior court granted the defendant's motion for new trial on the grounds that further prosecution had been barred by the magistrate's dismissal of the complaint, which was based on a factual finding the defendant was innocent. (*Ibid.*) The Court of Appeal disagreed and reversed the order granting a new trial: "Defendant's assumption, that the magistrate's dismissal constituted a valid determination on the merits of the charges against him, is based upon the premise that the magistrate had authority or jurisdiction to make such a determination. To the contrary, the magistrate's role is limited by statute to determining whether or not there is 'sufficient cause' to believe defendant guilty of a public offense. (See Pen. Code, §§ 871, 872.) . . . [¶] . . . [I]n assisting him in his determination of 'sufficient cause,' the magistrate is entitled to perform adjudicatory functions akin to the functions of a trial judge. Yet the proceeding is not a trial, and if the magistrate forms a personal opinion regarding the guilt or innocence of the accused, that opinion is of no legal significance whatever in view of the limited nature of the proceedings." (*Uhlemann,* at pp. 666–667.)

■ In the case before us, Jane Doe testified at the preliminary hearing that appellant touched her inappropriately under her clothing on four occasions when she was under 14 years old. A person who believed her testimony regarding these essential facts could find all the elements necessary for a violation of section 288.5. At both the preliminary hearing and the hearing on the motion under section 851.8, the magistrate made it clear that while he was concerned about inconsistencies in Doe's testimony and the prosecution's ability to obtain a conviction as a consequence, he had not found that Doe was lying or that her version of events was untrue. To the contrary, the magistrate indicated that he believed "[t]here's something there." Given the absence of any factual finding that Doe's testimony was untruthful, we cannot say that *no* person of ordinary care and prudence would believe or strongly suspect appellant was guilty of the charged offense. (Cf. *Adair, supra,* 29 Cal.4th at p. 906 [noting in hypothetical that a court may make a finding of factual innocence in a rape case where it determined the victim was lying about her lack of consent].)

■ Our conclusion in this regard is consistent with the decision in *Bleich, supra,* 178 Cal.App.4th at page 301, in which the court stated, "[T]he fact the trial court found there was insufficient evidence to bind over appellant for trial based on its interpretation of the evidence (or lack thereof) does not,

standing alone, sustain defendant's burden of proof to show factual innocence." Appellant acknowledges *Bleich,* but claims it is distinguishable because the order discharging the defendant in that case was based on an evidentiary failure by the prosecution rather than findings that completely exonerated the defendant. Appellant suggests that in this case, the prosecution put forward all the evidence of guilt that it could muster but still fell short of establishing probable cause, effectively demonstrating his factual innocence. The distinction proposed by appellant ignores that different parties bear the burden of proof at the hearings he seeks to compare, and that the issue to be decided in each proceeding is not the same.

### III.

Taking a slightly different approach, appellant argues that the magistrate's order dismissing the complaint compelled a finding of factual innocence under the doctrine of collateral estoppel. We reject the claim.

█ Collateral estoppel precludes relitigation of an issue that has already been decided in a former proceeding when (1) that issue is identical to an issue in a former proceeding; (2) it was actually litigated in the former proceeding; (3) it was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom issue preclusion is sought is the same as, or is in privity with, a party in the former proceeding. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 848–849 [25 Cal.Rptr.2d 500, 863 P.2d 745]; *Tennison v. California Victim Comp. & Government Claims Bd.* (2007) 152 Cal.App.4th 1164, 1174 [62 Cal.Rptr.3d 88] (*Tennison*).) "Even if these threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles." (*Gikas,* at p. 849.) "Where, as here, 'the facts determining whether the trial court properly applied collateral estoppel are uncontested, . . . application of the doctrine is a question of law to which we apply an independent standard of review.' " (*Tennison,* at p. 1174.)

Appellant's attempt to obtain a determination of factual innocence through the doctrine of collateral estoppel fails for several reasons.

First, as explained in the preceding part, the issue of factual innocence was not an issue actually litigated or necessarily decided during the preliminary hearing. While the magistrate concluded there were inconsistencies in Jane Doe's testimony that precluded a finding of probable cause, no finding of factual innocence was made.

█ Second, " '[T]he doctrines of res judicata or collateral estoppel are inapplicable to orders dismissing criminal proceedings following preliminary

hearings.' " (*People v. Wallace* (2004) 33 Cal.4th 738, 749 [16 Cal.Rptr.3d 96, 93 P.3d 1037], citing *Uhlemann, supra,* 9 Cal.3d at pp. 667–668; see *People v. Ortiviz* (1977) 74 Cal.App.3d 537, 540–541 [141 Cal.Rptr. 483].)

Third, collateral estoppel does not apply where the two proceedings at issue have different burdens of proof (*In re Sylvia R.* (1997) 55 Cal.App.4th 559, 563 [64 Cal.Rptr.2d 93]; *In re Nathaniel P.* (1989) 211 Cal.App.3d 660, 670, 672 [259 Cal.Rptr. 555]) or where the burden of proof falls on a different party in each proceeding (*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1524 [38 Cal.Rptr.2d 612]). Here, the prosecution bore the burden of proof at the preliminary hearing while appellant had the initial burden in his motion under section 851.8.

Finally, we reject appellant's claim that collateral estoppel is required by *Tennison, supra,* 152 Cal.App.4th 1164. In that case, the district attorney agreed to entry of an order finding the defendant factually innocent of a murder for which his conviction had been vacated, even though the defendant had not met the criteria under section 851.8. (*Tennison,* at pp. 1178–1179.) The defendant argued that the determination of factual innocence had collateral estoppel effect in a proceeding before the California Victim Compensation and Government Claims Board, in which he was seeking recovery for his allegedly wrongful conviction and incarceration. (*Id.* at pp. 1168, 1171–1172.) The Court of Appeal concluded that threshold requirements for collateral estoppel had not been met (*id.* at pp. 1174–1177), but that in any event, it would "undermine . . . the integrity of the judicial system" to give collateral estoppel effect to a finding that did not appear to reflect true factual innocence (*id.* at pp. 1177–1179).

The posture of this case is different than *Tennison,* as are the proceedings at issue, but it would similarly violate public policy to hold that the magistrate's order dismissing the complaint against appellant amounted to a finding of factual innocence. The judge who presided as the magistrate heard appellant's motion under section 851.8 and made it clear that he was not convinced of appellant's innocence, notwithstanding his reservations about Jane Doe's testimony. To conclude that a finding of no probable cause equated to a finding of factual innocence would contradict the court's assessment of the evidence and give relief to a defendant who had not, in fact, established his entitlement to such.[2]

---

[2] We do not consider whether the collateral estoppel issue was properly presented for the first time in a petition for reconsideration. The People have not argued on appeal that the issue has been forfeited.

## DISPOSITION

The orders denying appellant's petition under section 851.8 and his petition for reconsideration of the same are affirmed.

Jones, P. J., and Simons, J., concurred.