Filed 5/26/15  P. v. Pastor CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B254315 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA057678) |
| v. | |
| DANIEL CARLOS PASTOR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Beverly L. Bourne, Judge.  Affirmed.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Alene M. Games, Deputy Attorney General, for Plaintiff and Respondent.

————————————————

Daniel Carlos Pastor appeals the trial court's denial of his motion for a finding of factual innocence under Penal Code section 851.8.[1] We affirm.

## BACKGROUND

An information filed January 17, 2013 charged Pastor with one count of assault by means likely to produce great bodily injury on Henry Escobedo, in violation of section 245, subdivision (a)(4), with an allegation of personal infliction of great bodily injury; and one count of assault by means likely to produce great bodily injury, also in violation of section 245, subdivision (a)(4), on Yelina Harodehinojosa. Pastor pleaded not guilty and denied the allegation. Pastor and his codefendants John Pastor and Jesse Castillo agreed to a court trial on September 3, 2013.

At trial, victim Escobedo testified that on July 22, 2012, he went to a barbecue at the house of his neighbor across the street, John Pastor,[2] defendant Pastor's brother. He arrived at around 7:30 p.m. or 8:00 p.m. on his way back from a baseball game. Escobedo's girlfriend, victim Yelina Harodehinojosa, was already at the barbecue. Escobedo entered the house and then went into the backyard, grabbed something to eat, and hung out in the backyard with Yelina and other guests. He had two full cups of wine or other alcohol, and Yelina was drinking too.

Pastor's and John's sister, Stacy Nerge, and her boyfriend Josh Atkinson were at the party, as were Stacy's twin children, Jesse and Jessica Castillo.[3] Jesse was looking at Escobedo aggressively and "being a complete . . . asshole." Escobedo told Pastor and John, who both talked to their nephew. Jesse calmed down a little, but he left the party and came back outside "real aggressive again." Between 9:30 p.m. and 10:30 p.m., a fistfight broke out between Pastor and Jesse. Escobedo was trying to separate them when

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] For brevity we use the first names of the individuals (other than appellant Pastor and victim Escobedo) who were involved in the incident.

[3] At the time of trial Escobedo was 27, and Jesse and Jessica Castillo were 20.

2

he was pulled and tugged by a man named Scott,[4] who hit him in the left eye. Escobedo fell to the floor, and when he got up he saw John, Pastor, and Jesse coming at him with one other person. Everyone, including Pastor, hit Escobedo in the head and back, and he fell to the ground again. Jesse kicked him in the head, back, and shoulders as Escobedo went in and out of consciousness. Escobedo had not physically attacked Pastor, John, or Jesse before they began to punch and kick him.

The second time that Escobedo came to, he realized his girlfriend Yelina was on the ground with him, trying to shelter his back from the blows. She was being hit as well. Escobedo used one hand to try and protect Yelina, but she continued to be hit and kicked. This went on for "10 minutes easy," until Escobedo felt his father pick him up by the back of his shirt. John and Jesse continued to hit Escobedo in the face. Escobedo went into the living room where he was hit by Jesse in the face and then hit in the back of the head by someone he couldn't see. His father came into the living room, picked Escobedo up, and walked outside with Escobedo, where John and another man hurled threats and profanity at Escobedo.

Supported by his father, Escobedo walked home, where deputies arrived immediately. Escobedo went to the hospital in an ambulance. Photographs taken at the hospital showed him with one eye very swollen, a dislocated shoulder, a contusion on his left arm, a bruise on his chest, and other injuries. He continued to visit the doctor for treatment and still had medical issues, including a torn knee ligament, and a broken nose.

On cross-examination, Escobedo testified that Pastor struck him "out of simply rage and drunkenness"; he had done nothing to Pastor. He had just been trying to split up the fight between Pastor and Jesse. Escobedo was "buzzed" but not drunk. Once before when Escobedo had been at John's house Jesse had been in an altercation with someone else, and Escobedo had been introduced to Pastor, with whom he hung out drinking. Escobedo had not seen Jesse again before the incident. Escobedo testified he had never

---

[4] With Escobedo out of the courtroom, Pastor's counsel made an offer of proof that all the defendants and witnesses would testify there was no Scott there that evening and they did not know who Scott was.

3

done drugs or been arrested for anything: "I'm not a criminal. I've never had a criminal past."

Escobedo's father Enrique testified that at around 10:00 p.m. or 11:00 p.m. on the day of the barbecue he heard yelling as if someone was fighting. He went across the street, looked over the fence, saw the fight, and jumped over. Enrique saw that Escobedo was the one getting hit and Yelina was on the ground too. At that point Jesse was hitting Escobedo. Enrique picked Escobedo up, and Jesse and then John hit Escobedo repeatedly right in the face, continuing to punch him in the living room. Enrique took Escobedo outside and back to his house. Escobedo was unable to see out of his swollen eyes and was bleeding.

Yelina testified that she had been dating Escobedo for five years. On the night of the barbecue she was there, drinking beer, when Escobedo arrived after the baseball game. Outside in the back yard, she heard Escobedo ask for a beer and Jesse tell him, "'[g]et your own f'n beer.'" She was inside when the fight began, and when she came out she saw Jesse and Escobedo fighting and then saw the fight broken up by someone who might have been Pastor. The fight escalated, with many people hitting Escobedo, including Pastor. When she saw Escobedo lying on the ground she decided to jump on top of him to cover him, because she thought if she didn't they would probably kill Escobedo. The fight did not stop. All three defendants were kicking Escobedo when Yelina fell on him, and once she was on top of Escobedo she was kicked repeatedly. Escobedo's father pulled him up and took him into the house, and Yelina then saw fighting in the living room. The police arrived and told her to stay in the house while Enrique took Henry across the street. Yelina's shirt was ripped and she had bruises on her arms, back, legs, and knees, as well as a bump on her head; she had been kicked or hit more than 20 times. She confirmed on cross-examination that someone named Scott was there and made threats after the incident. She also stated that she did not see Jesse and Pastor fighting initially, or Escobedo trying to break it up. Pastor was involved in the brawl later on.

4

Los Angeles County Sheriff's Department Deputy Eduardo Allatore testified that he arrived on the scene at around 10:00 p.m. Although the call had been for a large group outside on the street, he saw no injuries on the people at John's home. A man from across the street directed Deputy Allatore to his home, where he found the victim. The victim appeared drunk, and his face was swollen with blood in his mouth area. Because he kept asking whether the deputy had a warrant, Deputy Allatore did not know whether he was a victim or a suspect.

Pastor joined in John's motion to dismiss for insufficient evidence, stating that Escobedo's testimony was extremely questionable and was contradicted by Yelina, who testified that Pastor tried to break up the fight. Further, although Escobedo testified that he had no contact with the law, the court had taken judicial notice of Escobedo's two convictions, one for driving while under the influence and one regarding drugs. The court denied the motion.

For the defense, Pastor's and John's sister Stacy (and the mother of Jesse) testified that when she arrived at the barbecue, Yelina, Jesse, and Jesse's twin sister Jessica were already there. Stacy had a couple of beers, and Pastor was drinking, but Jesse was not drinking because he was under 21. When Escobedo arrived he seemed under the influence, saying he had a six pack at the baseball game and acting aggressive. She heard Escobedo ask Jesse to "get him a fucking beer" and Jesse respond that Escobedo should get his own beer. Things got tense, with Escobedo bothering Jesse and saying he wanted to box. She tried to calm Escobedo down, but the tension continued for hours. Stacy's daughter Jessica was standing in the music area playing tunes from her IPod, and Escobedo went over and stood really close, "up against her butt." Stacy's boyfriend Josh Atkinson asked Escobedo to move and he would not, so Josh pushed Escobedo with his finger. Escobedo started to throw punches at Josh's face. Josh fought back and hit Escobedo in the jaw, sending him to the ground. With Pastor behind him, John went to check on Escobedo, who got up and punched John in the face. Everyone ran over while Escobedo "started swinging and grabbing and going crazy." Escobedo pulled Yelina down with him, and Stacy and Jessica fell on top of them in a "dog pile." Someone

5

jumped over the fence and started throwing everyone off of the pile. In the confusion she couldn't see what was happening except that people were trying to grab others to pull them out of the fight. Escobedo was at the bottom of the pile, and his father took him out of the backyard. A few minutes later Escobedo came back through the gate and into the house, but he was pulled back out. The sheriff was there 10 minutes later. Yelina told Stacy that she was glad Escobedo got hurt, because he hurt her (Yelina). Stacy had bruises all over from the dog pile, and she was sore. John had bruises on his face.

Investigating officer Nelson Rios testified that he took the case report and went out to John's home the day after the fight, but nobody answered when he knocked at the door. In his report Deputy Rios named only John as a suspect, based on his interviews with Escobedo and Yelina, although the deputies who responded on the night of the fight had the names of several others. Escobedo also described his attackers as John's family members, and Yelina said she saw John and other family members punching and kicking Escobedo. Deputy Rios did not interview anyone else. Eventually, Deputy Rios made six-packs to show to Escobedo, who identified John, Jesse, and Pastor as the ones who attacked him. Deputy Rios came up with Pastor as a subject during his investigation by using department resources to find his relation to John.

Jessica (Jesse's twin) testified that she had been changing music at the party when Escobedo was drunk and stood very close behind her, and her mom's boyfriend Josh asked Escobedo to move. Escobedo refused, Josh pushed him, Escobedo hit Josh, and the fight began. Escobedo fell to the floor and John went over to help him, and then Escobedo began swinging at John. Everyone went over to try to break them apart. Yelina fell on Escobedo who held her around the neck, and when Jessica tried to help Yelina up, Escobedo grabbed Jessica by the hair and held her down. Eventually she got free and went inside. She never saw Jesse, John, or Pastor "beating on" Escobedo.

Alejandro Mendez, Jessica's boyfriend, was at the barbecue and testified that he saw Escobedo fighting with Josh. The others tried to pull the girls away. After Escobedo's father took him outside, he saw Escobedo run back into the house, where Escobedo attacked the Pastor brothers and Jesse. Escobedo seemed to be the aggressor.

6

Pastor testified in his own defense. On the night of the barbecue, Escobedo was belligerent and drunk. Tension developed between Escobedo and Jesse, and at some point a fight broke out between Escobedo and John. Pastor saw Escobedo swing at Josh, Josh swing at Escobedo, and Escobedo go down, outside on the grass area. John went over to pick Escobedo up, and Escobedo hit John. Jessica and Yelina went over, and he went over, too. "Everyone got into a big rumble." They started swinging. John was in the mix, but not swinging, and Jesse was not in the mix. Pastor was trying to get another guest, Chuck, away from the melee, because he was hitting Escobedo. When Escobedo's dad came to pull everyone off him, Chuck and Josh were still hitting Escobedo. By this time the light outside was dim. He saw Escobedo run back into the house and fight with Josh, with John trying to pull Josh back, and then they got Escobedo out. Pastor denied that he ever kicked, punched, or "lay a finger" on Escobedo. He was a bystander, and he had no injuries.

On cross-examination, Pastor stated he had had maybe four beers by the time the fighting started. John and Jesse were drinking beer too. Pastor admitted there were inconsistencies between his testimony and his statement to the investigator (whom he had told that he was not able to see who was kicking Escobedo), but he remembered some things more clearly now. Pastor repeated that he never saw John hit Escobedo.

On redirect examination, Pastor repeated that he saw Escobedo swing at Josh. His memory had been refreshed and he was clearer now about what happened the night of the fight. Escobedo hit Jesse, Jesse hit him back, and Josh and Chuck fought with Escobedo.

John's wife Guadalupe Pastor testified that at an earlier gathering at their home, she saw Escobedo hit Yelina. Yelina said she was accustomed to blows from Escobedo. Guadalupe cut the party short. On July 22, Escobedo came to the barbecue drunk. Guadalupe asked Yelina to tell Escobedo to leave, but after she did it once Yelina said she was afraid Escobedo would beat her at home if she asked him again. Escobedo was acting aggressive. Guadalupe left the house for about a half hour, and when she came back she saw Escobedo arguing with Josh and Escobedo was trying to fight. When Josh hit Escobedo, he fell backwards to the ground. Guadalupe was afraid and ran to

7

Escobedo. Her husband John joined her, and when Escobedo regained consciousness he started punching John, and after others came over Escobedo was punching everybody and grabbing the hair of the women. She ran inside and called 911. She did not remember seeing Pastor among the people involved, and did not see Pastor or John hitting Escobedo or Yelina. She did see Chuck hitting Escobedo.

John testified that Escobedo showed up drunk, acting aggressive and stumbling. He saw Yelina serve vodka to Escobedo. Escobedo was harassing Jesse, and John told him to stop. He did not see Pastor engage in a fistfight that day. John was frightened when he saw Escobedo on the ground, and he ran out and tried to help him. After he shook Escobedo for a minute, Escobedo came to, sat up, and swung at John. Pastor was not fighting and did not physically abuse Escobedo or Yelina, and John saw no injuries on Pastor after the fight.

In closing, the prosecutor argued that Yelina had testified that she saw all three defendants, including Pastor, kicking and punching Escobedo before she jumped on top of him. Escobedo also had testified that all three hit and kicked Yelina. Pastor's counsel argued that Escobedo was the aggressor, Pastor had no injuries, and that Escobedo was hit only by Jesse and Josh. Escobedo was not a credible witness, and had lied about his history with law enforcement. The investigation of the case had been slipshod, and the prosecution witnesses' testimony did not match up. In rebuttal, the prosecutor argued that this was "a one-sided fight, a fight of many people against one person. That's against the law," and the defendants' testimony was not credible.

In rendering its verdict, the trial court stated that Escobedo's credibility was called into question by his lie about his criminal record and his denial that he was drunk, although every defense witness, and the sheriff's deputy, testified that Escobedo was very drunk. Yelina's testimony that Escobedo was not drunk was contradicted by everyone else, and Escobedo's father Enrique, Jessica's boyfriend Alejandro, and Erika all testified that they did not see the start of the fight. Although Escobedo testified he was a peaceful person, almost every other witness testified to the contrary, and because it was unclear who started the fight self-defense became an issue. Escobedo had gotten away from his

8

father and run back into the house to keep fighting. Escobedo's extensive injuries explained why charges were filed, but "the problem before the court is whether or not the testimony was enough to—was the evidence proved beyond a reasonable doubt that all three defendants are found guilty, and the court finds there is a lack of evidence in this case, a lack of proof beyond a reasonable doubt. . . . [¶] . . . [¶] The court understands why the charge was filed, but truly this was a situation where there's two sides to every story." The court found all three defendants, including Pastor, not guilty.

Pastor filed a motion for a finding of factual innocence under section 851.8, subdivision (c) which stated: "The plain and simple facts are that Daniel Pastor did not assault, or cause harm, to the alleged victim." Pastor signed a declaration repeating his testimony that he attempted to separate the people involved in the fight and "at no time did [he] ever strike, punch, or batter, Henry Escobedo." Although he had been found not guilty, "[he] was named in the criminal complaint [and] [he] now [has] a record with the criminal index. . . . [¶] For all the above reasons [he is] asking this court to find [him] factually innocent." At a hearing, the court stated that it had found Pastor not guilty because the evidence did not prove his guilt beyond a reasonable doubt, and there was a higher standard for a finding of factual innocence. Pastor's counsel argued "[m]y understanding [is] that the burden in a motion for the court to find a defendant factually innocent is preponderance of the evidence." The court denied the motion. Pastor filed this timely appeal.

## DISCUSSION

A defendant acquitted of criminal charges may petition the trial court for a finding of factual innocence under section 851.8, subdivision (b). (*People v. Adair* (2003) 29 Cal.4th 895, 897.) Section 851.8, subdivision (e) provides: "Whenever any person is acquitted of a charge and it appears to the judge presiding at the trial at which the acquittal occurred that the defendant was factually innocent of such charge, the judge may grant the relief provided in subdivision (b)." "Under subdivision (b), an acquitted defendant may petition for the sealing and destruction of any arrest records relating to the charge. The trial court then holds a hearing at which 'the initial burden of proof shall rest

9

with the petitioner to show that no reasonable cause exists to believe that the [defendant] committed the offense [charged]. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense [charged].' [Citation.] At the hearing, both the defendant and the district attorney may present evidence such as 'declarations, affidavits, police reports, or any other evidence . . . which is material, relevant and reliable,' . . . . The statute further directs that '[a] finding of factual innocence and an order for the sealing and destruction of records pursuant to this section shall not be made unless the court finds that no reasonable cause exists to believe' the defendant committed the offense charged. [Citation.]" (*Id.* at pp. 902–904.) On appeal from the trial court's ruling on such a petition, we defer to the trial court's factual findings if they are supported by substantial evidence, and we "independently examine the record to determine whether the defendant has established 'that no reasonable cause exists to believe' he or she committed the offense charged.'" (*Id.* at p. 897.)

"""'Reasonable cause'"" under section 851.8 has been defined as ""'that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'"" [Citations.] To be entitled to relief under section 851.8, "'[t]he arrestee [or defendant] thus must establish that facts exist that would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person . . . is guilty of the crimes charged. [Citation.]"" (*People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1458.) ""'[F]actually innocent' as used in [section 851.8 subdivision [b] does not mean a lack of proof of guilt beyond a reasonable doubt or even by 'a preponderance of evidence.' [Citation.]" [Citation.] Defendants must "show that the state should never have subjected them to the compulsion of the criminal law—because no objective factors justified official action . . . ." [Citation.] *In sum, the record must exonerate, not merely raise a substantial question as to guilt.*'" (*Id.* at p. 1459.) The

10

defendant has the burden to show "'"that there was *no reasonable cause* to arrest him in the first place."'" (*Id.* at p. 1460.)

Our review of the record leads us to conclude that Pastor failed to meet the burden to show that no reasonable cause existed to believe he committed the charged assaults on Escobedo and Yelina. The evidence at trial was contradictory about who started the fight and who later hit and kicked Escobedo and Yelina, but all agreed that the victims were injured in a melee outdoors at a party where people (including the victims and Pastor) had been drinking. Our review of the record does not demonstrate that *no* person of ordinary care and prudence would suspect that Pastor participated. The trial court concluded that the prosecution had not carried its burden to prove beyond a reasonable doubt that Pastor assaulted the victims, but a lack of proof beyond a reasonable doubt or even by a preponderance of the evidence is not sufficient to find that Pastor was factually innocent. Pastor had the burden to show that the evidence exonerated him, and that there was no reasonable cause to arrest him in the first place. (*People v. Esmaili*, *supra*, 213 Cal.App.4th at pp. 1459–1460.) His declaration summarizes his trial testimony and the procedure and, without further elaboration, asks the trial court to find him factually innocent. He has not carried his burden to show that the motion should have been granted.

On appeal Pastor argues that the trial court believed the defense witnesses and did not believe Escobedo and Yelina. The court's assessment of witness credibility after trial, however, is far from a determination that "'no objective factors justified official action'" in the first place. (*People v. Adair*, *supra*, 29 Cal.4th at p. 905.) The trial court's credibility determinations and resolutions of factual conflicts are not dispositive on appeal from a ruling on a petition for factual innocence. (*Id.* at pp. 905–906.) As the trial court explained, it denied the petition even though it concluded that the prosecution had not proven beyond a reasonable doubt that Pastor was guilty, because the burden was now on Pastor, and his burden was higher. Factual innocence is not the same as a lack of proof of guilt beyond a reasonable doubt. or even (as Pastor's attorney argued) a lack of proof of guilt by a preponderance of the evidence. (*Id.* at p. 909.) Pastor had the burden

to show that the evidence established that he should never have been prosecuted, and after independent review we conclude he did not do so.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.