Filed 9/14/23  P. v. Wright CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>MICHAEL JAMES WRIGHT,<br>        Defendant and Appellant. | A165676<br><br>(Alameda County<br>Super. Ct. No. H36730) |

In 2005, a jury convicted defendant Michael James Wright of first degree murder, attempted murder, assault with a firearm, and possession of cocaine for sale.  The trial court sentenced him to 38 years to life in prison.  Following a successful petition for habeas corpus to reduce his first degree murder conviction to second degree murder, Wright was sentenced to 28 years to life.  Wright later petitioned for resentencing, arguing his second degree murder conviction was no longer valid in light of recent amendments to the felony-murder law. (Pen. Code, § 1172.6.[1])  The court granted the petition and, based on an agreement between the People and Wright, it

---

[1] All further undesignated statutory references are to the Penal Code. Wright originally petitioned for resentencing under former section 1170.95. The Legislature later renumbered the provision without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) Unless otherwise specified, we will refer to the renumbered provision.

vacated the second degree murder conviction and replaced it with a voluntary manslaughter conviction. Also pursuant to the parties' agreement, the court modified the indeterminate term to a determinate term of 28 years in prison.

Wright petitioned for resentencing a second time (§ 1172.6, subd. (a)), in which he argued his attempted murder conviction was no longer valid in light of additional amendments to the felony-murder law; this appeal concerns that petition. The trial court redesignated the attempted murder conviction to robbery in concert and sentenced Wright to an aggravated term of nine years on that count; the stated purpose of the nine-year term was to keep the previously bargained-for 28-year sentence in place. Wright contends the court erred in concluding he was bound by the terms of the prior agreement, such that he had to accept resentencing that would leave the duration of his sentence unchanged or seek to withdraw the prior plea agreement and relitigate the resentencing process. Wright argues the court erred in resentencing him in a manner that provided no benefit to him. We reverse and remand for resentencing.

## BACKGROUND[2]

In November 2002, Victor Barbosa, a cocaine distributor, was shot and killed during a cocaine purchase gone awry. The event started when "middleman" M.T. arranged for Barbosa to meet him and Wright at M.T.'s home; Barbosa was to deliver a kilogram of cocaine. It was the prosecution's theory that Wright had arranged the transaction, not intending to purchase the drugs but to steal them. After money had been exchanged and while the cocaine was being tested for potency, Wright had a brief telephone

---

[2] We take the facts from our opinion affirming Wright's convictions in his direct appeal. (See *People v. Wright* (Dec. 12, 2006, A111006) [nonpub. opn.] 2006 WL 3604347.)

2

conversation. Shortly afterwards, one of Wright's accomplices, who had been hiding outside the home in Wright's van, kicked in the front door and entered. He opened fire towards the area of the home where Barbosa was located. Barbosa's dead body was later found face down on the floor of the kitchen with multiple bullet wounds. Wright and his accomplices fled; he was later apprehended.

Wright was charged with first degree murder of Barbosa (§ 187, subd. (a) [count 1]), attempted murder of M.T. (§ 187/664 [count 2]), assault with a firearm of P.T. (§ 245, subd. (a)(2) [count 3]), and possession of cocaine for sale (Health & Saf. Code, § 11351 [count 4). The information further alleged that Wright was armed with a firearm (§ 12022, subd. (a)(1)) and had a controlled substance prior conviction (Health & Saf. Code, § 11370.2, subd. (a)). A jury convicted Wright on all counts and found true the allegations. The trial court sentenced Wright to 38 years to life in prison. This sentence included a seven-year middle term on the attempted murder count.

In 2017, Wright filed a petition for habeas corpus under *People v. Chiu* (2014) 59 Cal.4th 155, 158–159 (aider and abettor may not be held liable for first degree murder under a natural and probable consequences theory), arguing his murder conviction should be reversed. The trial court reduced the first degree murder conviction to second degree murder and sentenced him to 15 years to life on that count, with a total sentence of 28 years to life.

In 2019, Wright moved to vacate his second degree murder conviction and to obtain resentencing under former section 1170.95, which was enacted as part of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). Senate Bill 1437 amended the natural and probable consequences doctrine for murder and the felony-murder rule "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to

3

kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The parties stipulated to resolving the petition by modifying Wright's indeterminate sentence to a determinate term of 28 years. As part of this resolution, Wright's second degree murder conviction was vacated and replaced by a conviction for voluntary manslaughter with an 11-year term, plus a one-year enhancement for a principal being armed. The attempted murder conviction was resentenced to a consecutive upper term of nine years. Wright waived "any claims of irregularity or impropriety based on the typical . . . rules that are required" and "specifically agree[d] to full consecutive stacking."

Finally, in 2022, Wright filed a second petition to modify his attempted murder conviction in light of the changes enacted by Senate Bill No. 775 (Senate Bill 775) (Stats. 2021, ch. 551, § 2), which amended former section 1170.95 to expand eligibility for resentencing to persons convicted of attempted murder. In briefing, the parties agreed Wright was entitled to resentencing on his attempted murder conviction, but they disagreed on the appropriate remedy. Wright argued his conviction should be redesignated as a simple robbery (§ 213, subd. (a)(2)) with no more than a consecutive term of one year, representing one-third of the base term of three years for that offense. The People argued the conviction should be replaced with a first degree residential robbery in concert (§ 213, subd. (a)(1)(A)) and the upper term of nine years should be imposed, leaving Wright's sentence unchanged. Alternatively, if the trial court determined Wright was entitled to a lower sentence, the People argued the 2019 agreement should be invalidated, his murder conviction should be reinstated, and the resentencing process should begin anew.

4

At the hearing on the resentencing petition, the trial court asked defense counsel whether Wright sought to disrupt his 2019 negotiated plea with the result being a return to the status quo *ante* under the authority of *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). Counsel advised the court that Wright did not want to disrupt the agreement if a *Stamps* remedy would result.

The trial court explained Wright was bound by the terms of his 2019 plea and could either accept resentencing that would leave the duration of that sentence unchanged or could seek to withdraw from the 2019 deal and litigate the resentencing process anew. The court noted it would not have agreed to a negotiated disposition in 2019 for less than 28 years. The court observed both parties had given up a considerable amount of ground to reach the stipulated disposition and, if that agreement were to be abandoned, both parties would have to get back what they had given up. In particular, the People would have the opportunity to establish Wright could be prosecuted successfully for both murder and attempted murder under a remaining viable theory of aiding and abetting a residential robbery in concert as a major participant who demonstrated reckless indifference to human life. The evidence indicated Wright brought armed, masked men with him to the meeting at M.T.'s home, and kept them hidden in his van until he signaled them to kick down the door with guns ablaze and turned a drug deal into a planned and armed residential robbery.

The trial court replaced the attempted murder charge with first degree robbery (§ 213, subd. (a)(1)(A)), finding Wright "voluntarily acting in concert with two or more . . . persons commit[ted] a robbery within an inhabited dwelling." The court explained it was "going to impose the upper term because that is part of the 2019 agreement" and it was "going to leave the

time exactly the same at nine years." Reserving his objections, Wright stipulated to having his attempted murder conviction modified to a conviction for robbery in concert in violation of section 213, subdivision (a)(1)(A), with the resulting sentence remaining a determinate term of 28 years.

## DISCUSSION

Wright argues the trial court erred in concluding his 2019 agreement prevented him, as a matter of law, from deriving any benefit from the amendments to the felony-murder law. We agree.

Generally, when reviewing a trial court's resentencing ruling following an evidentiary hearing under section 1172.6, " ' "we review the factual findings for substantial evidence and the application of those facts to the statute de novo." ' " (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) The primary issue here is the preclusive effect of Wright's 2019 agreement vis-à-vis the ameliorative amendments to section 1172.6, an issue of law that we independently review. (See *People v. Arroyo* (2016) 62 Cal.4th 589, 593; *People v. Tran* (2015) 61 Cal.4th 1160, 1166; *People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1462.)

To begin, Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) It also significantly narrowed the felony-murder exception to the malice requirement for murder. (See §§ 188, subd. (a)(3), 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 957.) Senate Bill 1437 created a procedure by which a person convicted of murder under the natural and probable consequences doctrine may file a petition with the sentencing court to have the conviction vacated. (§ 1172.6, subd. (a).) Following Senate Bill 1437, appellate courts were split on whether it applied to attempted murder. Senate Bill 775, which became effective

6

January 1, 2022, resolved that dispute. Pursuant to Senate Bill 775, section 1172.6 now permits a person who, under the natural and probable consequences doctrine, is convicted of attempted murder "following a trial or *accepted a plea offer in lieu of a trial*" to file a petition with the sentencing court to have the conviction vacated if certain conditions apply. (§1172.6, subd. (a)(1)–(3), italics added.)

Wright contends the proper application of Senate Bill 775 in this case is to remand for resentencing with directions to the trial court to redesignate the target offense as simple robbery, while leaving the remainder of the 2019 agreement intact. The Attorney General insists preservation of the 28-year sentence was proper in light of the parties' 2019 agreement. The resolution of this appeal involves the intersection of the statutory scheme of plea bargaining and the Legislature's authority to modify existing plea agreements through subsequent enactments.

The process of plea negotiation contemplates an agreement negotiated by the People and the defendant and approved by the court. (§§ 1192.1, 1192.2, 1192.4, 1192.5.) Each side negotiates to gain a benefit and agrees to abide by the terms of the agreement. (*People v. Segura* (2008) 44 Cal.4th 921, 929–930.) Judicial approval is an essential component of the bargain. (*Id*. at p. 930.)

Upon acceptance of the agreement by the parties and approval by the court, a defendant generally "cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b).) Generally, such agreements are deemed to incorporate not only the existing law but subsequent changes enacted for the public good. (*Doe v. Harris* (2013) 57 Cal.4th 64, 66.) "That the parties enter into a plea

7

agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Ibid.*; see § 1016.8.)

The words of a statute generally provide the most reliable indicator of legislative intent. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1046–1047.) If there is no ambiguity in the text, we " 'presume the Legislature meant what it said and the plain meaning of the statute governs.' " (*Ibid.*) Here, the Legislature made an express statement that the sentencing reforms enacted by Senate Bill 775 apply to existing plea agreements. Section 1172.6, subdivision (a)(2) permits resentencing whether a defendant was convicted by a jury or "a plea offer in lieu of trial."

Even if we were to find a textual ambiguity in this otherwise express statutory language, the legislative history demonstrates Wright's agreed-to nine-year term for attempted murder is not insulated from the subsequent legal changes wrought by Senate Bill 775. According to the bill's author, further amendment of section 1172.6 was required because an overly narrow interpretation of Senate Bill 1437 "has led to an absurd and unfair situation where people are eligible for resentencing if the victim died, but are ineligible if the victim did not die." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 775 (2021–2022 Reg. Sess.) Feb. 19, 2021, p. 3 (Senate Committee Analysis).) A proponent of the bill added that the unduly limited interpretation of Senate Bill 1437 "has left incarcerated the people who prosecutors and jurors thought were less culpable, while many people convicted of murder have successfully petitioned the court for release." (Senate Committee Analysis, at p. 9.) According to the bill's author, "the least culpable people are still serving decades in prison even though they should be eligible for relief." (*Id.* at p. 3.)

By enacting Senate Bill 775, the Legislature intended that a defendant previously convicted of attempted murder be entitled to resentencing in a manner commensurate with their culpability under amended section 1172.6. The goal of this legislation would be thwarted if the prosecution could routinely withdraw from plea agreements where it deemed the length of the new sentence was insufficient. Similarly, a resentencing procedure adhering to the prior agreed-upon term such that a defendant receives no benefit is contrary to legislative intent of providing relief to incarcerated defendants.

Based on the express statutory language of section 1172.6 and the legislative history of Senate Bill 775, we conclude Wright is entitled to the benefit of Senate Bill 775 without unwinding other aspects of his 2019 agreement. *Harris v. Superior Court* (2016) 1 Cal.5th 984 and *People v. Prudholme* (2023) 14 Cal.5th 961 (*Prudholme*)[3] further support our conclusion.

*Harris v. Superior Court* considered the effect of Proposition 47 (Gen. Elec. (Nov. 4, 2014)) on convictions, including those resulting from plea agreements. "Proposition 47 reduced certain nonviolent crimes . . . from felonies to misdemeanors" (*Harris v. Superior Court*, *supra*, 1 Cal.5th at p. 988), and created a resentencing petition procedure applicable to those "serving a sentence for a conviction, *whether by trial or plea*, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense." (§ 1170.18, subd. (a), italics added.) *Harris* rejected the People's claim that

---

[3] While this appeal was pending, the California Supreme Court rendered its decision in *Prudholme*, *supra*, 14 Cal.5th 961. We asked the parties to provide supplemental briefing on *Prudholme's* application to the issues on appeal. We have reviewed the timely filed supplemental letter brief submitted by Wright's counsel. The Attorney General did not file a response.

they should be allowed to withdraw from a plea bargain if the defendant successfully petitions for resentencing under Proposition 47. *Harris* observed that, "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris*, at p. 991.) It reasoned "[t]he resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner," " 'the financial and social benefits of Proposition 47 would not be realized, and the voters' intent and expectations would be frustrated.' " (*Id.* at p. 992.)

In *Prudholme*, the defendant pled guilty to second degree burglary pursuant to a negotiated plea agreement. (*Prudholme*, *supra*, 14 Cal.5th at p. 964.) The maximum available probationary term was five years; the parties agreed to three years. (*Ibid.*) While the appeal was pending, the Legislature enacted Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950), which reduced the maximum length of probation for most felonies to two years. (*Prudholme*, at pp. 963–964; see § 1203.1, as amended by Stats. 2020, ch. 328, § 2.) After examining the legislative history, *Prudholme* concluded the Legislature did not intend for the prosecution or the trial court to be permitted to withdraw approval from a plea agreement modified by Assembly Bill 1950. (*Prudholme*, at pp. 975–977.) Under these circumstances, the appropriate remedy was to reduce the length of probation to that specified under the current law while leaving the remainder of the plea bargain intact. (*Id.* at pp. 969–970, 979.)

*Stamps*, relied on by the Attorney General, is distinguishable. *Stamps* held a defendant whose sentence included an enhancement for a serious felony conviction was entitled under Senate Bill No. 1393 (2017–2018 Reg.

Sess.) to have his case remanded to the trial court so the court could consider whether to exercise its newly conferred discretion and strike the enhancement in the interests of justice. (*Stamps*, *supra*, 9 Cal.5th at p. 705.) However, if the court decided to strike the enhancement in a case where it had been stipulated to in a negotiated plea, *Stamps* held either the People or the court could withdraw approval of that plea agreement. (*Stamps*, at pp. 707–708.)

Unlike the legislation at issue in *Stamps*, Senate Bill 775 does not authorize trial courts unilaterally to modify an agreed-upon sentence. (*Stamps*, *supra*, 9 Cal.5th at p. 701.) Instead, Senate Bill 775 sets forth a procedure for eligible defendants to seek reduced sentences in keeping with their culpability. A shorter sentence does not substantially deprive the People of the benefit of their bargain, as where the application of an ameliorative, amended statutory provision totally relieves a defendant from his vulnerability to sentence. (Cf. *People v. Collins* (1978) 21 Cal.3d 208, 215.)

We conclude that neither the mandates of section 1192.5 nor the *Stamps* remand procedure should apply. The proper remedy here is to remand for resentencing to allow Wright to seek the ameliorative benefits of Senate Bill 775 while leaving the remainder of the 2019 agreement intact. Wright argues we should remand with directions for the trial court to redesignate the target offense to simple robbery. While the court erred in concluding its sentencing discretion was limited by *Stamps*, it did not abuse its discretion by redesignating the target offense to robbery in concert of an inhabited dwelling. The court determined Wright brought armed, masked men with him to the meeting at M.T.'s home, kept them hidden in his van until he signaled them to kick down the door with guns ablaze, and turned a

11

drug deal into a planned and armed residential robbery. Substantial evidence supported the court's decision. (*People v. Silva* (2021) 72 Cal.App.5th 505, 520 [redesignation process necessarily involves factfinding by the resentencing judge].)[4]

Robbery in concert within an inhabited dwelling is punishable by imprisonment for three, six, or nine years. (§ 213, subd. (a)(1)(A).) On remand, the trial court is entitled to exercise the full panoply of sentencing options, including whether to impose a consecutive or concurrent term, the midterm, the mitigated term, or one-third the midterm. (See § 1170, as amended by Senate Bill No. 567 (2021–2022 Reg. Sess.) [making the midterm the presumptive sentence unless certain circumstances exist].) The court's discretion includes all these options, including the possible reimposition of a nine-year term, provided the sentence complies with amended section 1170. But we express no opinion regarding how the court should exercise its discretion in resentencing Wright on count 2.[5]

---

[4] Although Wright does not raise this as an issue on appeal, we note the absence of a jury instruction on robbery in concert did not preclude the trial court from redesignating Wright's conviction as robbery in concert because the evidence demonstrated Wright did not act alone when he committed robbery within an inhabited dwelling. (See *People v. Howard* (2020) 50 Cal.App.5th 727, 738; § 213, subd. (a)(1)(A).) Additionally, at oral argument, Wright's counsel argued for the first time that the court's findings were not supported by evidence in the record. We do not address this argument. (*People v. Cardenas* (1997) 53 Cal.App.4th 240, 248, fn. 4.)

[5] We acknowledge Wright filed an ex parte motion to amend the abstract of judgment in the superior court on July 5, 2023; the motion purported to identify errors in the abstract. ~(ACCMS 480)~ We are confident the parties and the court will identify and correct errors, if any, on remand.

**DISPOSITION**

The sentence as to count 2 is vacated, and the matter is remanded for resentencing on that count. Upon resentencing, the clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the new sentence and to forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____
Rodríguez, J.

WE CONCUR:

_____
Tucher, P. J.

_____
Fujisaki, J.

A165676

13