Filed 12/5/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079001 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR127760) |
| HEATHER LEATRICE HENLEY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Reversed; remanded with directions.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

In 1992, a jury convicted Heather Leatrice Henley of murder (Pen. Code,[1] § 187, subd. (a); count 1); two counts of robbery (§ 211; counts 2 and 3); and assault with a firearm (§ 245, subd. (a)(2); count 4).  However, the

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

jury found not true the allegation that Henley personally used a firearm (§ 12022.5, subd. (a)) in connection with counts 1 through 3.  The court sentenced Henley to prison for 25 years to life on count 1 plus an additional term of six years for counts 2 through 4.  Henley appealed, and we affirmed the judgment.  (See *People v. Henley* (Jan. 26, 1994, D016818) [nonpub. opn.].)

In 2019, Henley filed a petition for resentencing under section 1172.6[2] as to her murder conviction.  The superior court appointed counsel, determined that Henley had made the requisite prima facie showing under the statute, and issued an order to show cause.  The parties agreed that Henley's original murder conviction was premised on a felony murder theory and that her eligibility for section 1172.6 relief was contingent on whether the evidence showed she was a major participant in the robbery who acted with reckless indifference to human life.  After holding an evidentiary hearing in 2021,[3] the superior court found that Henley was not entitled to relief because the prosecution proved beyond a reasonable doubt that she was a major participant who acted with reckless indifference to human life.

Henley appeals, contending the court improperly found that she personally used a firearm in contradiction to the not-true finding of the jury during her 1992 trial.  She also argues that substantial evidence does not

---

[2]    Henley brought her motion under former section 1170.95, which was renumbered as section 1172.6 without substantive change on June 30, 2022. (See Stats. 2022, ch. 58 (Assem. Bill No. 200) § 10, eff. June 30, 2022.)  As such, we refer to the subject statute by its current number throughout this opinion.

[3]    The superior court stayed Henley's petition while the appellate courts determined the constitutionality of section 1172.6.  Thus, the evidentiary hearing on Henley's petition for resentencing occurred over two years after she filed her initial petition.

support the court's finding that she was not entitled to relief.  We agree that the court prejudicially erred in finding that Henley personally used a firearm during the robbery.  As such, we reverse the court's order denying Henley's petition under section 1172.6.  However, we do not agree with Henley that the court's findings were not supported by substantial evidence.  As such, we remand this matter back to the superior court to hold another section 1172.6 evidentiary hearing consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

In the superior court's order denying Henley's petition, it referenced our recital of the facts in *People v. Henley*, *supra*, D016818 as "reasonable, fair, and accurate."  Thus, we repeat those facts from our previous opinion to provide context.  However, we use first names of various third parties to protect their privacy.

"FACTS

"On August 30, 1991, shortly after the midnight closing of the drive-up window at the Taco Bell at 5070 Federal Boulevard in San Diego, assistant manager Lourdes A[.] was cleaning the restaurant with employee Santos N[.] The interior portion of the restaurant had been closed since 11 p.m. [Lourdes] heard knocking on the rear door and told the woman who knocked that they were closed when she requested napkins.  About five minutes later Henley knocked at the front door and [Lourdes] waved her away saying they were closed.

"At about the same time, Irma S[.], [Santos's] cousin, was in her pickup truck outside the restaurant waiting to give him a ride.  [Irma] watched as Henley and two men walked from the rear of the Taco Bell to the entrance of the driveway.  After a few minutes Henley walked up to [Irma's] pickup and asked her for a light for her cigarette.  [Irma] said she did not have a light,

3

and Henley returned to the front of the restaurant where she stood talking to the others. Sanchez could see [Lourdes] and [Santos] inside the restaurant.

"Five to ten minutes later, [Irma] heard the rear door open as [Santos] took out the trash cans. Henley and the others hurried to the back and forced their way into the restaurant, pushing [Santos] back inside. All of the assailants had guns.[4] The assailants disabled the telephones in the restaurant.

"Henley was the first one to grab [Lourdes]. She asked [Lourdes] to show them where the safety deposit was located. Henley pointed her gun at [Lourdes] and ordered her to kneel on the floor, taking off [Lourdes's] glasses and removing her jewelry and watch.[5] One of the men took [Lourdes's] purse from the office area and handed it to Henley who took $300 from it. During this time [Santos] was lying on the floor. He told the assailants not to hurt [Lourdes].

"Henley told [Lourdes] that if she did not give them the money they would kill her and [Santos]. One of the assailants, later identified as Calvin Cooper, put a gun in [Lourdes's] mouth and told her to show him where the money or the safety deposit was or he would blow off her head. While [Calvin[6]] moved [Lourdes] toward the front part of the store, Henley and another assailant opened the cash registers looking for money. All of the

---

[4]     This factual recital appears to be in conflict with the jury's findings.

[5]     Evidence that Henley used a gun was offered as part of the prosecution's case in chief. However, as discussed *ante*, the jury found not true the personal use allegation against Henley.

[6]     We refer to Calvin Cooper by his first name to avoid confusion with another individual who shares the surname Cooper in an opinion we discuss *post*.

restaurant money had already been put in the safety box, which [Lourdes] could not open. [Calvin] then took [Lourdes] back toward the rear of the restaurant, and while he was doing so [Lourdes] heard a gun shot. When she heard the shot, [Lourdes] was looking down, standing next to where [Santos] lay. Henley and the others left after the shooting.

"[Calvin] had [Lourdes] kneel next to [Santos]. [Lourdes] saw [Santos] was dead; she saw he had been shot in the back of the head. Before he left, [Calvin] told [Lourdes] not to call the police or he would come back and shoot her. [Lourdes] waited five to ten minutes then opened the back door to get help. As she opened the door to her left, [Lourdes] saw [Calvin] who pulled out his gun and shot at [Lourdes], hitting her in the arm and seriously wounding her. After waiting a few more minutes inside the restaurant, [Lourdes] went outside again and flagged down [Irma] who had seen the robbers inside and was returning to the Taco Bell after trying to call for help from a nearby location.

"[Irma] knew that [Santos] always had his wallet with him and he carried it in his front pocket when wearing his uniform pants. [Irma] also knew [Santos] had about $150 in his wallet when he went to work that night. His wallet was never recovered.

"Henley's fingerprints were on [Lourdes's] eyeglasses found at the scene. [Santos] had died from the gunshot wound to the back of his head inflicted from a distance of about one foot.

"Henley's defense was that she had been drinking Thunderbird wine with the group and was driven to the Taco Bell restaurant. She knocked on the front door and asked for the time. Henley denied knowing there was going to be a robbery, [and that] she took off [Lourdes's] glasses, asked for her jewelry, had a gun, and other details of the crimes."

5

The 2021 Evidentiary Hearing

The prosecution presented three exhibits to the superior court in support of its opposition to Henley's petition. The first contained minutes and motions that were part of the 1992 trial record; the second consisted of the entire trial transcript; and the third was this court's opinion in *People v. Henley, supra,* D016818. The prosecutor explained to the court that the second exhibit was "the most significant . . . because that is the record upon which the evidence is coming to support that the petitioner is a major participant and acted with reckless indifference to human life."

During her initial argument, the prosecutor focused entirely on the trial transcripts in making her contentions. She emphasized Henley's direct involvement in the robberies, pointing out that Henley threatened to kill both the victims. The prosecutor asserted that the evidence showed that Henley was a major participant who acted with reckless indifference to human life under the factors in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). In doing so, the prosecutor admitted that the jury did not find that Henley personally used a firearm but argued that finding did not "necessarily mean she wasn't armed with something."[7] Indeed, the prosecutor maintained "there [was] no question . . . that [Henley] and her cohorts were armed, and not only were they armed, they were armed with a loaded gun ready and available to use. There's no question about that." The prosecutor also pointed out that Lourdes testified that she "believed" Henley had a gun. When questioned by the court, the prosecutor stated it was her position that Henley had a gun during the robbery. However, the prosecutor acknowledged that the getaway

_____

[7] The prosecutor never argued that Henley was armed with anything but a gun.

6

driver claimed that she did not see Henley with a gun, and the prosecutor admitted that she did not have any evidence to refute that testimony. Nevertheless, the prosecutor subsequently reiterated that Lourdes believed that Henley had a gun. And, when specifically arguing that Henley exhibited a reckless indifference to human life, she noted all three perpetrators worked in unison: "And this is significant, all three got out at the same time. They're out and they're out with their loaded weapons."

After the prosecutor argued that Henley was not eligible for relief under section 1172.6, defense counsel called Henley as a witness at the evidentiary hearing. Henley admitted that she had lied in her prior testimony during trial because she was scared. She testified that the first time she met Calvin was on the night of the shooting, about two and a half hours before the robbery. She was aware that Calvin and the other perpetrator (S.S.)[8] planned to commit a robbery on the night in question. Moreover, Henley admitted she accompanied them because she wanted money, but she denied knowing that violence would be involved or that Calvin or S.S. had been violent in the past. Rather, she emphasized that her focus was on obtaining some money.

On the night of the robbery, Henley learned that Calvin and S.S. planned to rob the Taco Bell when Calvin sent her to knock on the door and ask for a napkin. The Taco Bell was not the original place for the robbery, but Calvin and S.S. could not find the place they had planned to rob.

When the three of them entered the Taco Bell, Henley was in the back of the store with Santos. However, Calvin told her to get Lourdes's jewelry and then check the cash registers. Henley stated Calvin's demeanor had

---

[8]    The People represent this third individual was a minor at the time the crimes were committed. As such, they refer to him by his initials "S.S." in the respondent's brief. We do so too in this opinion.

7

changed by that point, and she was afraid of him. Calvin had a gun pointed at Lourdes, and Henley admitted that she told Lourdes to give her Lourdes's jewelry because Calvin was "flipping" and would kill Lourdes if she did not do so. Henley then took Lourdes's jewelry and glasses.

Henley was attempting to open the cash registers in the front of the restaurant when Santos was shot. She testified that she looked back and saw Calvin standing over Santos with a gun but denied seeing the shooting when it occurred. She claimed that she did not know Calvin was going to shoot Santos. She also admitted that she did not do anything to help Santos before or after he was shot. Instead, as soon as she heard the gunshots, she and S.S. ran. Henley testified that she did not believe there was anything she could do to help Santos after she saw the bullet wound in his head.

Henley admitted she was aware Calvin had a gun on the subject night. She denied handling the gun herself or having a gun during the robbery. She knew S.S. had a "dummy gun" without a functional trigger.

During cross-examination, Henley admitted she was aware that S.S. had been involved with burglaries and robberies, which is how he knew Calvin. Nevertheless, she stated she did not know Calvin or S.S. were violent or that a robbery could involve violence. In addition, Henley stated that she had given money to her boyfriend, which he used to buy a gun and give that gun to S.S. Yet, she emphasized that she never handled that gun as well.

Additionally, Henley admitted that she told the parole board that Santos died because she had brought the gun, but she explained that her statement was to admit guilt to the board. She clarified that she felt "responsible because [her] boyfriend gave them a gun."

The prosecutor did not ask Henley if she had a gun during the robbery. Nonetheless, Henley claimed that she did not have a gun pointed at Lourdes

8

in response to another question, and the prosecutor moved to strike Henley's testimony as unresponsive.[9]  The prosecutor also pointed out areas in which Henley's testimony at the evidentiary hearing differed from her testimony at trial.

After Henley's testimony concluded and the court allowed the parties to further argue the petition, the court stated that it would read the trial transcripts and then provide a written ruling.  In that written ruling, the court denied the petition, explaining that it found, beyond a reasonable doubt that Henley "was a major participant in the underlying felony of robbery" and "acted with reckless indifference to human life."  In clarifying its ruling, the court based its conclusion on its finding that Henley was "[a]rmed with a firearm" and "threatened the two employees with immediate death, which threat was forcefully repeated by [Calvin] as [Calvin] thrust a firearm into the mouth of one of the employees."  The court acknowledged that the jury found that Henley did not personally use a firearm, but explicitly stated: "This Court finds she was armed with a firearm, which she displayed in a threatening manner.  She was personally armed with a firearm, knew [Calvin] was armed, heard his threats of immediate death after he thrusts his weapon into the mount of one of the employees . . . ."

Henley timely appealed.

## DISCUSSION

### A. *General Legal Background*

On September 30, 2018, the Governor signed Senate Bill No. 1437 (Senate Bill 1437).  "The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code

---

[9]    The court struck the testimony as unresponsive.

sections 188 and 189, as well as by adding Penal Code section [1172.6], which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722; see *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)

Section 1172.6, subdivision (c) provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

Moreover, section 1172.6, subdivision (d)(3) sets forth the burden of proof and the evidentiary rules to be followed by the court if the court grants an OSC and holds an evidentiary hearing:

> "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case

10

recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."

Here, the court issued an OSC and held an evidentiary hearing. At that hearing, the court determined that the People carried their burden to prove that Henley was guilty of murder beyond a reasonable doubt under the applicable changes in the law.

It is undisputed that Henley was not the actual killer in the instant action. Instead, she was convicted under the natural and probable causes doctrine or the felony murder rule. Senate Bill 1437 changed the law as to what needed to be proven to convict a defendant under felony murder. The parties agree that the essential question before the superior court during the section 1172.6 evidentiary hearing was whether Henley was a major participant in the underlying robbery who acted with reckless indifference to human life. (See § 189, subd. (e)(3).) Accordingly, we briefly discuss the current status of the felony murder rule in California.

The United States Supreme Court has addressed the degree of conduct and mental state required to impose the death penalty on non-killers convicted of murder under a felony murder theory. *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*) and *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*),

11

"collectively place conduct on a spectrum, with felony-murder participants eligible for death only when their involvement is substantial and they demonstrate a reckless indifference to the grave risk of death created by their actions." (*Banks*, *supra*, 61 Cal.4th at p. 794.)

*Enmund* lies at one end of the spectrum. Although the defendant in that case identified a robbery victim, drove armed confederates to the victim's house, acted as a getaway driver, and helped dispose of the weapons, the court determined him ineligible for the death penalty because he did " 'not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed.' " (*Banks*, *supra*, 61 Cal.4th at p. 799, quoting *Enmund*, *supra*, 458 U.S. at p. 797.)

*Tison* lies at the other end of the spectrum. There, the Supreme Court considered whether the death penalty could be imposed on two brothers who broke their father and his cellmate out of prison using numerous weapons and then, in their ensuing escape, carjacked and robbed a family that their cohorts ultimately killed. (See *Tison*, *supra*, 481 U.S. at pp. 138-142.) The court concluded that the brothers constitutionally could be subject to the death penalty because their "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." (*Id.* at p. 158.)

*Tison*'s holding was directly incorporated into section 190.2, subdivision (d), which governs special circumstance murder and was integrated into section 189, subdivision (e)(3) by Senate Bill 1437. Accordingly, "the standard under section 189, subdivision (e)(3) for holding . . . a defendant [who was not the actual killer] liable for felony murder is the same as the standard for finding a special circumstance under

section 190.2(d), as the former provision expressly incorporates the latter." (*In re Taylor* (2019) 34 Cal.App.5th 543, 561.)

Our high court has clarified that *Enmund* and *Tison* "establish that a defendant's personal involvement [in the crimes] must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder such as Earl Enmund." (*Banks*, *supra*, 61 Cal.4th at p. 802.) That is, he or she must have been a "major participant" in the crime, under the totality of the circumstances. (*Id.* at p. 803.) In *Banks*, the court identified several considerations relevant to the major participant inquiry: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

To determine whether a defendant acted with reckless indifference to human life, we "look to whether a defendant has ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' [Citations.]" (*Banks*, *supra*, 61 Cal.4th at p. 801.) "The defendant must be aware of and willingly involved in the violent manner in which a particular offense is committed, demonstrating reckless indifference to the significant risk of

13

death his or her actions create." (*Ibid*.) A defendant's degree of participation in the crime also can affect the reckless indifference inquiry; "the greater the defendant's participation in the felony murder, the more likely that he [or she] acted with reckless indifference to human life." (*Tison, supra*, 481 U.S. at p. 153.) Although "there are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life," such as " 'the manufacture and planting of a live bomb,' " armed robbery is not among them. (*Clark, supra*, 63 Cal.4th at p. 615, quoting *Banks, supra*, 61 Cal.4th at p. 810, fn. 9.)

In *Clark, supra*, 63 Cal.4th at pages 618 through 622, the California Supreme Court established a five-factor test for whether a defendant acted with reckless indifference to human life. As with the factors relevant to major participation, no one factor is necessary, nor is any necessarily sufficient. The first factor is the defendant's knowledge of weapons, and use and number of weapons. (*Id*. at p. 618.) "The mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life." (*Ibid*.) However, it may be "significant" if a defendant personally uses a weapon during the crime. (*Ibid*.) The second factor is whether the defendant was physically present at the crime scene and whether he or she had opportunities to limit the crime or aid the victim(s). (*Id*. at p. 619.) A defendant's presence may be particularly significant where "the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force." (*Ibid*.) The third factor is the duration of the felony; crimes of longer duration present greater risk of violence and therefore evince more reckless indifference. (*Id*. at p. 620.) "Where a victim is held at gunpoint, kidnapped, or otherwise

14

restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Ibid*.)  The fourth factor is the defendant's knowledge of his or her coparticipants' likelihood of killing.  (*Id*. at p. 621.)  A defendant who knows a coparticipant previously has used lethal force is more culpable than one unaware of a coparticipant's propensity for violence.  (*Ibid*.)  The fifth factor is whether the defendant made any efforts to minimize the risk of violence.  (*Ibid*.)  Such efforts may include planning the crime to occur at a time or location where bystanders are unlikely to be present, or using unloaded or minimally loaded firearms.  (See *id*. at pp. 621-622.)

Both the "magnitude of the objective risk of lethal violence and a defendant's subjective awareness of that risk" are relevant to the reckless indifference inquiry.  (*Clark*, *supra*, 63 Cal.4th at p. 623.)  "Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to demonstrate reckless indifference to human life.  Instead, "knowingly creating a 'grave risk of death' " is necessary to establish the requisite mindset.  (*Banks*, *supra*, 61 Cal.4th at p. 808.)  " '[T]he fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life."  (*In re Scoggins* (2020) 9 Cal.5th 667, 677, quoting *Banks*, at p. 808.)  "The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and must then consciously disregard "the significant risk of death his or her actions create."  (*Banks*, at p. 801.)

B. *Henley's Petition for Resentencing*

1. Henley's Contentions

Under section 1172.6, subdivision (d)(3), the superior court acts as an independent fact finder and determines whether the People have met their burden in proving the defendant guilty of murder under the revised felony murder law. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 (*Ramirez*); § 1172.6, subd. (d)(3).) Below, the superior court found that Henley was a major participant who acted with reckless indifference to human life under the *Banks/Clark* factors. Henley claims the court's finding is not supported by substantial evidence. In addition, she claims the trial court prejudicially erred in finding that she used a gun during the robbery in contradiction to the jury's not true finding that she personally used a firearm.

2. Standard of Review

A trial court's factual findings at a section 1172.6, subdivision (d)(3), hearing are reviewed for substantial evidence. (*Ramirez*, *supra*, 71 Cal.App.5th at p. 985; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) Under this standard, the record is reviewed " ' "in the light most favorable to the judgment" ' " and a reviewing court decides " ' "whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Bascomb*, at p. 1087.) "[W]e look to whether the prosecution has introduced sufficient evidence of

' " 'reasonable, credible, and of solid value to support a finding beyond a reasonable doubt' " ' " that petitioner was guilty. (*Clark*, *supra*, 63 Cal.4th at p. 618.)

### 3. Analysis

Here, Henley contends the superior court's conclusions were based primarily on two findings. First, the court found that Henley was personally armed with a firearm during the robbery. Second, Henley verbally threatened to kill Lourdes, and Calvin made the same threat and placed the gun in her mouth. As to the first finding, Henley maintains the jury's "not true" finding of the allegation that she personally used a firearm barred the court from reaching the opposite conclusion at the evidentiary hearing. To this end, she asserts that res judicata and collateral estoppel prohibit any relitigation of the factual issue whether she was armed. In addition, after filing her opening brief, Henley submitted notice of new authority that she claims is pertinent to this argument, *People v. Cooper* (2022) 77 Cal.App.5th 393 (*Cooper*).[10]

In questioning the superior court's factual finding that she used a firearm during the robbery, Henley is primarily challenging the preclusive effect of the jury's not-true finding on that same factual dispute, which is an issue of law we independently review. (See *People v. Arroyo* (2016) 62 Cal.4th 589, 593; *Cooper*, *supra*, 77 Cal.App.5th at p. 412; *People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1462.)

*Cooper* involved a defendant and two codefendants who participated in a kidnapping that resulted in the death of the victim. (*Cooper*, *supra*, 77

---

10      The defendant, Aaron Cooper, in *Cooper*, *supra*, 77 Cal.App.5th 393 is not the same Cooper as the one who was involved with Henley on the night in question here.

17

Cal.App.5th at p. 397.)  An autopsy revealed that the victim died of a gunshot wound to the head (*id*. at p. 400); however, it was unclear which defendant had fired the fatal shot.  "The jury convicted [Cooper] of one count of first degree murder and one count of kidnapping and found true that a principal was armed with a firearm during both offenses.  But Cooper—who was stipulated to be a convicted felon—was acquitted of a charge of being a felon in possession of a firearm." (*Id*. at p. 399, fn. omitted.)  The superior court denied Cooper's section 1172.6 petition for resentencing, "finding beyond a reasonable doubt that Cooper was a major participant in the kidnapping who acted with reckless indifference to human life.  In reaching this conclusion, the court made numerous statements to the effect that Cooper possessed and fired a gun on the day in question." (*Cooper*, at p. 408, fn. omitted.)  The appellate court reversed, concluding "that a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented." (*Id*. at p. 398.)  Based on the jury's finding that Cooper had not been in possession of a firearm at the time of the kidnapping, the appellate court found that "any evidence he possessed or used a gun should not have played a role in the [superior] court's analysis." (*Id*. at p. 412.)

The appellate court reached its conclusion relying on "the analogous context of petitions for resentencing under the Three Strikes Reform Act of 2012 (Proposition 36 or the Act)."[11]  (*Cooper*, *supra*, 77 Cal.App.5th at p. 413.)  In doing so, the court cited, with approval, *Arevalo*, *supra*, 244

---

[11]    Proposition 36 reduced "the punishment for some third strike offenses that are neither serious nor violent." (*People v. Arevalo* (2016) 244 Cal.App.4th 836, 841 (*Arevalo*).)  It also added section 1170.126, which "create[d] a procedure by which some inmates already serving third strike sentences [could] seek resentencing" to comport with the Act's prospective ameliorative effect. (*Arevalo*, at p. 841.)

Cal.App.4th 836 and *People v. Piper* (2018) 25 Cal.App.5th 1007. Both of those cases held that a superior court could not conclude that a defendant was ineligible for resentencing under section 1170.126 by relying on factual determinations about the defendant's gun use that "turn[ed] acquittals and not-true enhancement findings [at trial] into their opposites." (*Arevalo*, at p. 853; accord *Piper*, at p. 1015.) The appellate court in *Cooper* applied the analysis in *Arevalo* and *Piper* to section 1172.6. (*Cooper*, at p. 415.) However, the court noted a key difference between section 1172.6 and section 1170.126 in that the former allows the prosecution to present new evidence at a resentencing hearing while the latter does not. (*Cooper*, at pp. 415-416.) Yet, the appellate court determined that this difference did not affect its analysis of the issues before it "because the prosecution did not introduce any new or additional evidence at the hearing, and the trial court's conclusion that Cooper was ineligible for relief was based on the same evidence that the jury considered." (*Id.* at p. 416.) As such, the court had "no difficulty concluding" that, "in light of the evidence and arguments at trial, Cooper's acquittal of the firearm-possession count 'constituted [a] finding[ ] inconsistent with' the trial court's theory that was a major participant in the kidnapping who acted with reckless indifference to human life." (*Id.* at pp. 416-417.)

The appellate court in *Cooper* explained that the jury had rejected the prosecution's argument that the evidence proved Cooper was armed. Nonetheless, at the section 1172.6 evidentiary hearing, the superior court considered the same evidence, found that Cooper did possess and fire a firearm, and "explicitly relied on this finding to determine he was a major participant." (*Cooper*, *supra*, 77 Cal.App.5th at p. 417.) Consequently, the appellate court determined that the superior court prejudicially erred and

19

remanded the matter back to the superior court for a new hearing on whether Cooper was entitled to relief. (*Id*. at p. 418.)

Here, the People do not claim *Cooper*, *supra*, 77 Cal.App.5th 393 was wrongly decided. Rather, they maintain that *Cooper* is not instructive in the instant action because new evidence was presented at the section 1172.6 evidentiary hearing, namely Henley's testimony.[12] The People point out that Henley's testimony at the evidentiary hearing "differed significantly from her trial testimony and from her statements to police during the initial investigation." Because the superior court heard this new evidence, the People argue that it "necessarily had to make a credibility determination and resolve conflicts in the evidence that the trial jury did not." The People further emphasize that the superior court concluded that both Henley's trial testimony and her testimony at the evidentiary hearing were " 'incredible, self-serving, and unworthy of belief.' " Because the court found Henley's testimony not credible, the People argue the superior court was left with Lourdes's trial testimony that Henley was armed as well as the trial testimony of the getaway driver that she "saw [Henley] get out of her car carrying a small, 'clutch' bag that presumably carried a firearm." In other words, the People argue that by virtue of Henley testifying at the section 1172.6 hearing and the superior court finding her unbelievable, the court could then reconsider the trial evidence and reach the opposite factual finding of the jury, which considered that same evidence. We believe the

---

[12] To be clear, the prosecutor did not offer Henley's testimony or any other new evidence when it argued against the petition. In fact, the prosecutor informed the court that the 1992 trial transcript was the "most significant" exhibit before the court because it would provide the evidence to prove Henley was a major participant in the robbery who "acted with reckless indifference to human life."

People's argument is inconsistent with the holding in *Cooper*, *supra*, 77 Cal.App.5th 393.

Here, the People do not point to any new evidence presented at the section 1172.6 evidentiary hearing that addresses whether Henley used a firearm during the robbery. True, Henley testified at the evidentiary hearing and the superior court found her not credible (as it did her trial testimony). But Henley did not offer any new testimony about using a firearm during the robbery. Indeed, her testimony at trial and the evidentiary hearing was consistent on this point: She steadfastly claimed she was not armed.

Further, the People do not set forth any portion of Henley's testimony at the evidentiary hearing that proves she was armed. In fact, during that hearing, the prosecutor did not cross-examine Henley regarding her claim that she was not armed. Instead, in arguing that the substantial evidence supports the superior court's finding that Henley was armed during the robbery, the People solely rely on the testimony of two trial witnesses. That evidence is not new. It is the same evidence the jury found did not prove beyond a reasonable doubt the allegation that Henley personally used a firearm in the commission of the robbery. Accordingly, the superior court here erred the same way as the superior court in *Cooper*. It "effectively turned [an] acquittal 'into [its] opposite[ ].' [Citations.]" (*Cooper*, *supra*, 77 Cal.App.5th at p. 417.)

Having concluded that the superior court erred in finding Henley was armed, we turn to the appropriate disposition of this matter. The People argue that even if the superior court erred, such error was harmless in light of other evidence showing Henley was a major participant who acted in reckless indifference to human life. Assuming, without deciding, that the applicable standard for assessing prejudice is that of *People v. Watson* (1956)

46 Cal.2d 818, 836, we conclude the error was prejudicial. Under *Banks* and *Clark*, a defendant's personal possession of a weapon and actual use of a weapon are all highly relevant to whether the defendant was a major participant who acted with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at p. 618; *Banks*, *supra*, 61 Cal.4th at p. 803.) Although we agree with the People that the evidence Henley used a firearm during the robbery was not the only evidence supporting the court's eligibility determination, it was crucial to that determination. For example, in the court's written order, it mentioned twice that Henley was "armed with a firearm." The court also emphasized that Henley, while armed, threatened the two employees in Taco Bell with "immediate death" and displayed the firearm "in a threatening manner." Thus, it is clear from the court's order that it believed the fact Henley was armed was strong evidence that she acted with reckless indifference to human life. As such, we cannot say on this record that it would not be reasonably probable that the court would not have denied Henley relief had it not found that she possessed and used a firearm during the robbery. Accordingly, reversal is required.[13]

Although we conclude that the superior court prejudicially erred in finding that Henley used a firearm during the robbery, we disagree with Henley that we should direct the court to grant her requested relief. As the People point out, and we agree, there was other evidence that could support a finding that Henley was a major participant who acted with reckless indifference to human life. For example, Henley admitted that she knew at least one of her cohorts was armed with a working gun. She repeatedly

---

[13] Because we conclude that reversal is required under *Cooper*, *supra*, 77 Cal.App.5th 393, we do not address Henley's arguments that the court's finding that she was armed was barred under res judicata or collateral estoppel.

changed her story about what occurred inside the Taco Bell, including her role in the events. Henley twice attempted to gain access into the locked Taco Bell before the robbery began. In addition, even if Henley did not have a gun, there is evidence that she threatened Lourdes. Also, although she saw how Calvin placed his gun inside Lourdes's mouth and then pointed it at both her head and Santos's head, Henley continued with the robbery. She did not attempt to leave. And she never took any steps to help the victims.

On this record, we cannot say that substantial evidence does not support the court's conclusion that Henley was a major participant who acted with reckless indifference to human life. Thus, we decline to grant Henley her requested relief.

In short, the superior court erred in determining that Henley was armed during the commission of the robbery in contradiction to the jury's opposite finding at trial. Further, the court's finding appears to have been one of the most important facts on which it based its determination that Henley was not entitled to relief. Thus, we must reverse the order. That said, we stop short of concluding that substantial evidence did not support a finding that Henley was a major participant who acted with reckless indifference to human life. Therefore, it is appropriate to remand this matter for a new hearing on whether Henley is entitled to relief.

DISPOSITION

The order denying Henley's section 1172.6 petition is reversed. The matter is remanded for the trial court to hold a new hearing to determine whether the prosecution proved, beyond a reasonable doubt, that Henley was a major participant in the robbery who acted with reckless indifference to human life. In doing so, the superior court may not rely on any evidence admitted during the trial that contradicts the jury's finding that the

23

prosecution did not prove beyond a reasonable doubt that Henley personally used a firearm during the commission of the robbery.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.