Filed 10/16/25  P. v. Trivino CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN SAMUEL THOMAS TRIVINO,<br><br>    Defendant and Appellant. | H051328<br>(Monterey County<br>Super. Ct. No. 21CR004236) |

A jury convicted defendant John Samuel Thomas Trivino of the willful, deliberate, and premeditated murder of Martin Heredia (Pen. Code,[1] § 187, subd. (a); count 1) and conspiracy to commit Heredia's murder (§§ 182, subd. (a)(1), 187; count 2).  The jury found not true allegations attached to count 1 that Trivino personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and personally and intentionally discharged a firearm resulting in death or great bodily injury (§ 12022.53, subd. (d)).  Trivino later pleaded no contest to participation in a criminal street gang (§ 186.22, subd. (a); count 3).  The trial court sentenced Trivino to 25 years to life with the possibility of parole on count 1 and 25 years to life with the possibility of parole on count 2,

---

[1] All further unspecified statutory references are to the Penal Code.

the latter to run concurrently with the sentence on count 1. The court sentenced Trivino to 90 days in county jail on count 3, and Trivino received credit for the full 90 days.

Trivino filed a motion for new trial based on juror misconduct and, in the alternative, requested that the trial court order an evidentiary hearing under Code of Civil Procedure section 237 and release the jurors' identifying information to allow the parties to investigate potential juror misconduct. The court denied the motion for new trial and declined to order an evidentiary hearing or release juror identifying information.

On appeal, Trivino raises three issues. He maintains that his defense counsel at trial provided ineffective assistance by failing to object to the amendment of the information to add the conspiracy charge. In addition, Trivino asserts the trial court abused its discretion by declining to disclose juror identifying information. Finally, Trivino contends the court erred by failing to instruct the jury on aiding and abetting liability. He asks this court to reverse his convictions on counts 1 and 2 and to order the trial court to disclose juror identifying information.

For the reasons stated below, we discern no error and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

*A. Facts*

On June 7, 2016, Trivino, a member of the Norteño criminal street gang in King City known as "San Antonio Gardens" (SAG), was riding in Kendrix Perez's truck, with Perez, Ulises Silva, and another individual; Perez

---

[2] We set forth the relevant facts from the trial evidence in the light most favorable to the jury's verdict. (*People v. Luo* (2017) 16 Cal.App.5th 663, 668, fn. 2; *People v. Campbell* (2020) 51 Cal.App.5th 463, 469.)

was driving. They saw a van occupied by individuals whom Trivino knew to be members of the Sureño criminal street gang.[3] Trivino saw the same van "[m]inutes later" parked outside a residence on Cambridge Avenue and saw Sureño gang members at the residence.

After driving by the residence on Cambridge, Perez parked the truck on Bedford Avenue, a neighboring street. Trivino and Silva exited Perez's truck and walked to the corner, where they could see Heredia's residence on Cambridge and a group of Sureños. Trivino fired the entire magazine of a nine-millimeter gun at the opposing gang members. Trivino and Silva ran back to Perez's truck after the shooting, and Perez drove them away from the scene.

Heredia died from the gunshot wounds, and his cause of death was ruled a homicide.

### B. Preliminary Hearing and Charges

On June 1, 2021, the Monterey County District Attorney filed a complaint charging Trivino with willful, deliberate, and premeditated murder of Heredia (§ 187, subd. (a); count 1). The complaint alleged as to count 1 that Trivino personally and intentionally discharged a firearm and, in doing so, caused great bodily injury and death (§ 12022.53, subds. (c) & (d)), and that Trivino committed murder for the benefit of, at the direction of, and in association with a criminal street gang, namely, the Norteño criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)).

---

[3] In King City, the Sureños are rivals of SAG. Although Heredia was not identified by the parties as a Sureño gang member, Heredia's "friends were all known [Sureño] gang members" who were part of the Sureño subset known as "Mexican Klan Locos" (or "MKL"), and Heredia was with Sureño gang members in the van and at his residence.

On July 15, 2021, the trial court presided over a preliminary hearing. The district attorney presented testimony from King City Police Officers Brennan Lux, Dominic Mercurio, and William Clark, and King City Police Detective Joshue Partida.

Officer Lux observed evidence of gunfire damage to Heredia's residence and reviewed surveillance video footage showing Heredia retrieving food from a van, returning to the residence, being hit by gunfire, and falling into the garage. Lux did not know how many rounds were discharged during the shooting and was not able to recall without reviewing the video whether the surveillance camera captured any footage of people or vehicles on the street adjacent to Heredia's residence. The prosecution did not introduce the surveillance video footage into evidence at the preliminary hearing.

Officer Mercurio located 10 nine-millimeter cartridge casings in a two-yard radius approximately 64 feet from Heredia's residence. When asked on cross-examination whether he could tell from the markings on the recovered cartridge casings if the bullets had been fired from one gun, Mercurio answered in the negative, noting that he is "not an expert in that field."

In 2021, Officer Clark performed a cold case review of Heredia's 2016 homicide. After Trivino was arrested in 2021, Clark placed Trivino into a cell with another individual, identified as JW-1 (referred to as "JP1" in the parties' appellate briefs). Clark monitored the communications between Trivino and JW-1. Trivino identified himself to JW-1 as a Norteño gang member and recounted to JW-1 the events of June 7, 2016. Trivino stated he and "a younger homey, who was currently in prison" exited Perez's truck.

Perez stayed behind with the truck. Trivino had a nine-millimeter gun and emptied "the whole clip" shooting at "a scrap from far away."[4]

Detective Partida interviewed another person, referred to at the preliminary hearing as John Doe, about the 2016 homicide. Doe told Partida he was a member of SAG in 2016 and had personal knowledge of Heredia's homicide. Doe told Partida that he had spoken with Trivino about the homicide at a party at Trivino's residence two or three days after the shooting. Trivino, Silva, and Perez each separately told Doe that they had committed the homicide. Doe told Partida that "they were bragging about the homicide because it was gang related."

Trivino told Doe that Trivino, Silva, and Perez had been "driving around the city looking for other rival gang members" and, later, Trivino was across the street from Heredia's residence "waiting for someone to come out of the residence" "[b]ecause they were trying to kill rival gang members." Trivino told Doe that Trivino shot Heredia from across the street using a nine-millimeter gun before Trivino and Silva ran back to Perez's truck and left the scene.

Detective Partida, who testified as an expert on the Norteño criminal street gang, stated that, in 2016, there was "a period of heightened violence between Norteños and Sureños in King City," including "a large amount of shootings." Partida was familiar with Silva from other investigations and opined that Silva was an active member of SAG at the time of Heredia's murder. Doe told Partida that Trivino was a member of the Norteño criminal street gang. Detective Partida had not been aware of Trivino's membership

---

[4] During the preliminary hearing, Detective Partida, whom the parties stipulated was an expert on the Norteño criminal street gang, defined the term " 'scrap' " as "a derogatory term used by Norteño gang members to describe rival Sureño gang members."

in the Norteño criminal street gang util law enforcement interviewed Doe. Partida testified that "most of what" he had to rely on concerning Trivino's gang affiliation in 2016 was based on information supplied by Doe.[5]

Trivino did not introduce any evidence at the preliminary hearing. After hearing the evidence, the trial court found sufficient cause to believe Trivino committed the charged offense (murder) and sufficient evidence to support the allegations.

On July 19, 2021, the Monterey County District Attorney filed an information charging Trivino with one count of willful, deliberate, and premeditated murder of Heredia (§ 187, subd. (a)), with allegations of personal use of a firearm (a handgun) (§ 12022.53, subds. (b) & (e)) and specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)).

On January 23, 2023, the district attorney filed a second amended information[6] charging Trivino with one count of willful, deliberate, and premeditated murder of Heredia (§ 187, subd. (a); count 1), and one count of conspiracy to commit the crime of murder under section 187 (§ 182, subd. (a)(1); count 2). The second amended information included the following allegations attached to count 1: Trivino personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), personally and intentionally discharged a firearm resulting in death or great bodily injury (*id.*, subd. (d)), and committed count 1 for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd.

_____

[5] The preliminary hearing did not include any testimony about the source of Doe's information about Trivino.

[6] A first amended information was apparently prepared but not filed with the court.

(b)(1)).  The second amended information set forth the following overt acts (all of which took place on June 7, 2016):  (1) Trivino entered Perez's truck, (2) Trivino traveled past Heredia's house at 10:20 p.m., (3) Trivino exited Perez's truck on Bedford Avenue in King City, (4) Trivino walked with Silva on Cambridge Avenue towards Heredia's house, and (5) Trivino discharged a firearm at Heredia.  Defense counsel did not object to the amendment and waived formal reading of the charges and advisement of rights.  Trivino pleaded not guilty to both counts and denied all the allegations.

*C. Jury Trial and Verdict; Sentencing*

The jury trial began on January 23, 2023.  At the close of evidence, the trial court gave the jury the pattern CALCRIM instructions on following the law as the court explains it to them, not using external sources of information or conducting their own investigation or research, and the prosecution's burden of proof and the defendant's entitlement to an acquittal if the prosecution did not meet its burden.  In addition, the court gave the jury instructions on the charged counts—murder and conspiracy to murder—and the alleged enhancements.

The jury returned guilty verdicts on counts 1 and 2.  It found not true the firearm allegations attached to count 1.[7]  The trial court clerk polled the jurors and confirmed with each juror that the verdicts on counts 1 and 2 were their true verdicts.

On July 25, 2023, Trivino filed a motion for new trial and requested juror identifying information.  We describe his motion in greater detail *post* (pt. II.B.1.).

On July 27, 2023, the trial court sentenced Trivino to 25 years to life in prison on count 1 and 25 years to life in prison on count 2, the latter to run

---

[7] The parties waived their rights to jury trial on the gang allegation.

concurrently with the sentence on count 1, for an aggregate indeterminate term of 25 years to life.

On August 8, 2023, the trial court conducted a hearing on the district attorney's motion to add one count of participation in a criminal street gang (§ 186.22, subd. (a); count 3), a misdemeanor, and to dismiss the gang allegation on count 1 (§ 186.22, subd. (b)(1)). The court granted the motion. Trivino pleaded no contest to count 3 and the court sentenced him to 90 days in county jail with credit for time served.

Trivino appealed.

## II.  DISCUSSION

Trivino argues this court must reverse his conviction on count 2 for conspiracy to commit murder. Trivino contends his defense counsel rendered ineffective assistance by failing to object to the district attorney's request to amend the information to add this count based on a lack of independent evidence at the preliminary hearing supporting a conspiracy charge. He asserts the conspiracy charge was based solely on Trivino's extrajudicial statements. Trivino also maintains the trial court abused its discretion by declining to disclose juror identifying information because a juror's declaration set forth statements indicating juror misconduct. He asks this court to direct the trial court to disclose the requested information. In addition, Trivino asks this court to reverse his conviction on count 1 for murder because he contends the trial court erred by failing to instruct the jury on aiding and abetting liability despite substantial evidence that he was merely present at the scene.

The Attorney General disagrees on all points and requests that this court affirm the judgment.

8

A. *Ineffective Assistance of Counsel by Failing to Object to Amendment of the Information Based on the Corpus Delicti Rule*

   1. Legal Principles

" 'To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner.' " (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

A court can reject a claim of ineffective assistance if the defendant fails to establish either prong of the *Strickland* standard. (See *Strickland, supra,* 466 U.S. at p. 687; *People v. Weaver* (2001) 26 Cal.4th 876, 961.) "Representation does not become deficient for failing to make meritless objections." (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

Trivino argues that his defense counsel's failure to object to the prosecution's amendment of the information to add a charge of conspiracy to commit murder constituted ineffective assistance because the prosecution's evidence at the preliminary hearing was insufficient to establish probable cause for the charge. Trivino contends that the prosecution's evidence at the preliminary hearing consisted entirely of extrajudicial statements by Trivino to Doe, and the prosecution failed to present evidence from independent sources to support the conspiracy charge.

"The purpose of a preliminary hearing is to determine whether a defendant charged with a felony by criminal complaint should be held for

9

trial. [Citation.] The defendant will be bound over to superior court and held to answer if 'it appears from the examination that a public offense has been committed and there is sufficient cause to believe that the defendant is guilty.' (§ 872.) Conversely, the magistrate must order the complaint dismissed when 'it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense.' (§ 871.)" (*People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1459 (*Esmaili*).)

" ' "[T]he showing required at a preliminary hearing is exceedingly low." ' " (*Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 544 (*Zemek*).) " 'Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' " (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667; see also *People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 7.)

"At the preliminary hearing, the burden is on the prosecution to show there is probable cause to believe the defendant committed the charged offense." (*Esmaili*, *supra*, 213 Cal.App.4th at p. 1460.) To do so, " 'the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant.' " (*Munoz v. Superior Court* (2020) 45 Cal.App.5th 774, 779 (*Munoz*).) " 'In the preliminary hearing context, it has long been held that "[a] defendant cannot be held to answer unless the corpus delicti of the offenses with which he is charged is

10

established independently of his extrajudicial statements." ' " (*Id*. at p. 780; *People v. Powers-Monachello* (2010) 189 Cal.App.4th 400, 406; *People v. Herrera* (2006) 136 Cal.App.4th 1191, 1195, 1200–1202; *People v. Muniz* (1993) 16 Cal.App.4th 1083, 1087.)

" 'The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence "of every physical act constituting an element of an offense," so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues.' " (*Munoz, supra*, 45 Cal.App.5th at p. 780; *People v. Jones* (1998) 17 Cal.4th 279, 303.)

"A conspiracy conviction requires proof that the defendant and one or more other persons had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, and proof of the commission of an overt act by one or more of the parties to the agreement in furtherance of the conspiracy. [Citations.] ' " 'The punishable act, or the very crux, of a criminal conspiracy is the evil or corrupt agreement.' " ' " (*Munoz, supra*, 45 Cal.App.5th at p. 780.)

" ' " 'Evidence is sufficient to prove a conspiracy to commit a crime "if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime." ' " [Citation.] "Evidence of an agreement does not require proof that the parties met and expressly agreed; a criminal conspiracy can be shown through circumstantial evidence." ' ' " ' "The existence of a conspiracy may be inferred from the conduct, relationship,

11

interests, and activities of the alleged conspirators before and during the alleged conspiracy." ' " ' [Citation.] ' "[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder." ' " (*People v. Lamb* (2024) 16 Cal.5th 400, 442 (*Lamb*); *People v. Scully* (2021) 11 Cal.5th 542, 583.)

2. <u>Analysis</u>

The second amended information alleged that Trivino "did unlawfully conspire together and with another person and persons whose identity is unknown to commit the crime of [m]urder, in violation of [s]ection 187 of the Penal Code." The second amended information set forth the following overt acts in the charged conspiracy: Trivino entered Perez's truck, Trivino traveled past Heredia's house, Trivino exited Perez's truck, Trivino walked with Silva towards Heredia's house, and Trivino discharged a firearm at Heredia.

The evidence presented at the preliminary hearing showed that Trivino, accompanied by Silva and Perez, killed Heredia as part of a gang rivalry. It is true that most of the information presented at the preliminary hearing about Trivino's participation in the killing as the actual shooter originated with statements made by Trivino himself (to Doe and JW-1). On its own, this information would violate the independent proof rule. "[T]he independent-proof rule 'essentially precludes conviction based solely on a defendant's out-of-court statements.' [Citations.] . . . [T]he rule requires corroboration of the defendant's extrajudicial utterances insofar as they indicate a crime was committed, and forces the People to supply, as part of their burden of proof in every criminal prosecution, some evidence of the corpus delicti aside from, or in addition to, such statements." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1178, italics omitted (*Alvarez*).)

12

We decide that the prosecution did present "some evidence" (*Alvarez*, *supra*, 27 Cal.4th at p. 1178) that did not derive from statements made by Trivino. Detective Partida testified to the "large amount of shootings" between Norteños and Sureños in 2016 in King City. Partida independently knew that Silva, who told Doe about his own participation in the crime, was a Norteño. Doe informed Partida that Trivino was a Norteño. Doe told Partida that Silva and Perez had each described their participation, with Trivino, in the killing of Heredia.[8] These facts are sufficient to provide the " 'slight or prima facie showing' " (*id.* at p. 1181) necessary to satisfy the corpus delicti rule. The facts, not derived from Trivino's own statements, allow for Trivino's statements to "be considered to strengthen the case on all issues." (*Ibid.*)

Trivino argues that Detective Partida's testimony that Perez, Silva, and Trivino admitted to Doe their "involvement" in the homicide and Trivino told Doe that he was with Perez and Silva at the scene does not "prove any prior agreement to commit murder." We disagree. Given the " ' "exceedingly low" ' " threshold of proof required at a preliminary hearing (*Zemek*, *supra*, 44 Cal.App.5th at p. 544), independent evidence supporting extrajudicial statements may be circumstantial in nature " 'if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible.' " (*Munoz*, *supra*, 45 Cal.App.5th at p. 780.) Such circumstantial evidence, which " ' " ' "may be inferred from the conduct, relationship, interests, and

---

[8] In response to questions by the magistrate, Detective Partida clarified that Perez, Silva, and Trivino each independently told Doe that "these three individuals committed the homicide." There was no objection at the preliminary hearing to this testimony by Partida, and Trivino does not raise any contention on appeal with respect to the admissibility of these statements.

activities of the alleged conspirators before and during the alleged conspiracy," ' " ' " can establish a criminal conspiracy. (*Lamb*, *supra*, 16 Cal.5th at p. 442)

Trivino also contends that this evidence does not support the conspiracy to commit murder charge alleged in the second amended information but instead "constitutes . . . an entirely different crime: gang conspiracy." Again, we disagree. That the conspiracy to commit murder occurred in the context of gang rivalry does not preclude charging the conspiracy under traditional conspiracy principles.

"If evidence reflects that an active and knowing gang participant, acting with the required intent, agrees with other gang members to commit a felony, and an overt act in furtherance of the plan has been committed, a prosecutor may charge a traditional conspiracy to commit the gang participation offense under section 182, even if the target offense is not ultimately committed. Rather than expressing an intent to limit the scope of section 182, the enactment of section 182.5 provided prosecutors additional flexibility in charging a different kind of conspiracy, consistent with the Legislative Analyst's statement that the new provision 'expand[ed] the law on conspiracy to include gang-related activities.' " (*People v. Johnson* (2013) 57 Cal.4th 250, 263.)

The evidence at the preliminary hearing not derived from Trivino established that Heredia was killed, two individuals other than Trivino (one of whom was a Norteño) told Doe that they had committed the killing with Trivino as part of a gang killing, Trivino was a Norteño, and at the time of the killing in King City there were frequent killings between the rival Norteño and Sureño gangs. These pieces of evidence constitute sufficient

14

independent evidence of a prima facie case of a conspiracy between Trivino and at least one other person to commit the crime of murder.

"Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.)  We reject Trivino's claim that his counsel rendered ineffective assistance for failing to object to the amendment of the information to include a charge of conspiracy on the basis that there was insufficient independent proof of the crime.

### B. Disclosure of Juror Identifying Information

#### 1. Additional Background

At the start of trial, the trial court instructed the jury that they may not seek out or base their decision on any information, including any facts or law, from external sources and may only base their decision on the instructions given by the court and the evidence presented at trial.  The court reiterated the instruction throughout the course of the trial and told the jury to "notice how often [it] repeat[s] that [instruction]."  The court stated that it does so "because there ha[ve] been violations.  If you violate this rule, you may be subject to jail time, a fine, or other punishment.  It is a serious rule.  Please follow it."  The court instructed the jurors to contact the deputy if they receive any information about the case from a source outside of the trial, and to not discuss it with other jurors.

Following his conviction, Trivino filed with the trial court a motion for new trial and petitioned the court to release the jurors' personal information and order an evidentiary hearing pursuant to Code of Civil Procedure section 237.  As relevant on appeal, he asserted that, with respect to count 1, several jurors did not believe Trivino shot Heredia but convicted Trivino of murder because they believed his "mere presence" at the scene was sufficient for a

conviction.  Trivino argued in his motion that this evidence rendered the verdict on count 1 "not merely 'inconsistent' but legally infirm."  In the alternative, Trivino requested the court release the jurors' personal information and order an evidentiary hearing to allow the parties to more thoroughly investigate potential juror misconduct.

In support of his motion, Trivino provided a declaration from one of the jurors.[9]  The juror stated that he and "several jurors" were not convinced beyond a reasonable doubt that Trivino fired his weapon, but he and the other jurors joined in the guilty verdict on count 1 because they believed Trivino's "mere presence at the scene of the murder was enough to convict him."  The juror stated his own belief that Trivino's act of exiting Perez's truck on that day was sufficient participation for a finding of guilt on count 1. The juror asserted that, because "several of [the jurors] did not believe [Trivino] was the shooter, [they] all agreed to vote not guilty on the allegation attached to count 1, that [Trivino] personally used a firearm."

In opposition, the district attorney argued that the juror's declaration was inadmissible under Evidence Code section 1150 because the description of the juror's thoughts during deliberations was "inadmissible 'verbal reflection of the juror's mental processes' " and the juror's discussion of other jurors' views was both "inadmissible 'evidence of the subjective reasoning processes of jurors to impeach their verdicts' [and] inadmissible hearsay." The district attorney further argued that an inconsistent verdict involving a

_____

[9] Trivino's counsel acknowledged in his declaration in support of the motion for new trial that the juror's declaration does not meet the technical requirements set forth in Code of Civil Procedure section 2015.5.  However, he stated that the parties were prepared to stipulate that the trial court should consider the declaration despite this technical defect.

16

murder charge and firearm enhancements that is nevertheless supported by substantial evidence should not be subject to a new trial.

On July 27, 2023, the trial court conducted a hearing on Trivino's motion for new trial and request for juror identifying information. The court found that the single juror's declaration presented insufficient evidence to support a finding of juror misconduct and there was "more than sufficient substantial evidence" to support Trivino's conviction on count 1. The court thus declined to hold an evidentiary hearing. The court also denied the motion for new trial.

### 2. Legal Principles

Following the recording of the jury's verdict in a criminal proceeding, the defendant or the defendant's counsel may "petition the [trial] court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (Code Civ., Proc., § 206, subd. (g).) Personal juror identifying information "consists of jurors' names, addresses, and telephone numbers." (*Ibid*.) Courts consider such petitions under Code of Civil Procedure section 237. (*Ibid*.)

Under Code of Civil Procedure section 237, subdivision (b), a petition for access to personal juror identifying information must "be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." "This showing must ' "support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial." ' " (*People v. Munoz* (2019) 31 Cal.App.5th 143, 165; *People v. Cook* (2015) 236 Cal.App.4th 341, 345 (*Cook*).)

17

"Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported." (*Cook, supra,* 236 Cal.App.4th at p. 346.) " 'The hearing should not be used as a "fishing expedition" to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing.' " (*People v. Avila* (2006) 38 Cal.4th 491, 604 (*Avila*); *People v. Hedgecock* (1990) 51 Cal.3d 395, 419 (*Hedgecock*).)

"[I]f the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information," the court shall set the matter for hearing. (Code Civ. Proc., § 237, subd. (b).)

We review the denial of a petition for disclosure of juror identifying information and the denial of a request for an evidentiary hearing concerning possible jury misconduct for an abuse of discretion. (*Cook, supra,* 236 Cal.App.4th at p. 346 [disclosure]; *Avila, supra,* 38 Cal.4th at p. 604 [hearing].)

### 3. Analysis

Trivino contends the trial court erred in denying his petition for disclosure of juror identifying information and an evidentiary hearing on the basis that the juror declaration he submitted "described events that, if proven, would establish [juror] misconduct." He asserts that the juror's declaration demonstrated that " 'several jurors' " committed legal error by finding him guilty on the basis that his " 'mere presence' at the scene of the shooting was sufficient evidence of his guilt." Trivino maintains that such

18

legal error "suggests that one or more jurors researched the law, sought legal instruction from a source other than the trial court, or crafted personal theories of legal liability."

When determining whether jurors engaged in misconduct, trial courts "first consider what portions of the declarations are admissible.  Evidence Code section 1150, subdivision (a), provides:  'Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly.  No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.' " (*People v. Danks* (2004) 32 Cal.4th 269, 301–302 (*Danks*); *People v. Hayes* (1999) 21 Cal.4th 1211, 1255 (*Hayes*).)  In other words, the statute differentiates "between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved." (*People v. Steele* (2002) 27 Cal.4th 1230, 1261.)  " ' "This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent." ' " (*Danks*, at p. 302; *Hedgecock*, *supra*, 51 Cal.3d at p. 418 [prohibiting "the admission of jurors' testimony describing their own mental processes"].)

The juror's declaration here recounts the juror's reasons for joining in the jury's guilty verdict on count 1 and for finding not true the firearm enhancements attached to count 1.  It also asserts that other jurors shared the same reasons for agreeing with the verdict.  A juror's articulation of the reasons for their vote is "simply a verbal reflection of the juror's mental

19

processes. Consideration of such a statement as evidence of those processes is barred by Evidence Code section 1150." (*Hedgecock*, *supra*, 51 Cal.3d at p. 419; see also *Danks*, *supra*, 32 Cal.4th at p. 302.) Because the juror's declaration set forth only the juror's mental processes and his perception of other jurors' mental processes, the declaration is inadmissible under Evidence Code section 1150.

Trivino did not offer any other evidence in support of his contention of juror misconduct. Although he maintains that the juror's declaration "suggests that one or more jurors" impermissibly sought information from external sources, he does not present any affirmative evidence supporting that claim. Moreover, the trial court reiterated the instruction admonishing the jury not to research or share information throughout the course of the trial. We must presume that jurors are intelligent and capable of understanding the instructions. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 915.)

Because Trivino failed to proffer any admissible evidence of juror misconduct, we decide the trial court did not abuse its discretion in denying Trivino's petition for the disclosure of the jurors' personal information without an evidentiary hearing. (See, e.g., *Hayes*, *supra*, 21 Cal.4th at p. 1259.)

*C. Jury Instruction on Aiding and Abetting Liability*

1. Additional Background

During his closing argument, the district attorney asserted that Trivino was "the one that opened fire [on] Martin Heredia and ended his life" and was guilty of first degree murder. The district attorney outlined the requirements of the charges against Trivino and argued that the evidence supported finding Trivino guilty of the murder charge and the conspiracy

charge and finding true the enhancements attached to the murder charge. The district attorney did not raise aiding and abetting as a theory of Trivino's liability.

In his closing argument, defense counsel argued that the prosecution had not met its burden of proving Trivino's guilt beyond a reasonable doubt. Defense counsel contended that the evidence presented by the prosecution did not establish that Trivino was in Perez's truck or at the scene of the shooting on June 7, 2016, Doe's and JW-1's testimony regarding Trivino's statements to them was unreliable, and Trivino's conflicting statements regarding the shooting could be rationalized. Defense counsel neither argued that Trivino was an aider and abettor rather than a direct perpetrator nor suggested that Trivino was merely present at the scene of the shooting.

### 2. Analysis

Trivino contends the trial court erred in failing to give instructions sua sponte on aiding and abetting, such as CALCRIM No. 401, despite substantial evidence at trial that Trivino "was simply present at the scene or had knowledge that a crime was being committed and did not prevent it." He bases his contention on the evidence adduced at trial establishing that Trivino walked to the corner opposite Heredia's house with Silva while believing Silva intended to shoot at the people in front of the house.

We are not persuaded by Trivino's claim of instructional error. The trial court instructed the jury that, to prove Trivino guilty of murder, the prosecution needed to demonstrate that Trivino committed the act that caused Heredia's death with either the intent to kill or the intent to commit the act, the natural and probable consequences of which were dangerous to human life, with knowledge of its dangerousness and conscious disregard for human life. It is clear from the instruction that the jury had to find Trivino

21

had the intent to kill Heredia or commit the act that caused Heredia's death, and Trivino's mere presence was insufficient to support a guilty verdict.

Moreover, the prosecution did not seek Trivino's conviction on an aiding and abetting theory. (See *People v. Cooper* (1991) 53 Cal.3d 1158, 1161–1162 [concluding sua sponte duty existed where prosecution sought conviction on an aiding and abetting theory]; *People v. Boyd* (1990) 222 Cal.App.3d 541, 557, italics added [noting that CALJIC No. 3.01 (also an aiding and abetting instruction) " 'should be given sua sponte in every case in which any defendant is *prosecuted as* an aider and abettor' "]; accord, *People v. Delgado* (2013) 56 Cal.4th 480, 488.) Nor did Trivino rely on aider and abettor liability or his " 'mere presence' " at the scene of the shooting as a defense. (See *Boyd*, at p. 558 [concluding "that the evidence on which defendants rely would not require the trial court to give the mere presence or mere knowledge instructions sua sponte [because t]he instructions would have been inconsistent with defendants' theories of defense"].) The theory that Trivino was "merely present" at the scene of the shooting arose only postconviction in connection with Trivino's motion for new trial and petition for the disclosure of juror identifying information (discussed in greater detail *ante* (pt. II.B.1.)).

We conclude the trial court did not have a sua sponte duty to instruct the jury on aiding and abetting liability.

*D. Error in the Abstract of Judgment*

In reviewing the instant appellate record, we have identified errors in the abstract of judgment that were not raised by either Trivino or the Attorney General. Specifically, the abstract of judgment (dated August 4, 2023) lists the incorrect "year crime committed" (capitalization omitted) information for Trivino's convictions on counts 1 and 2. The abstract of judgment erroneously states that the crimes were committed in "2021." The

"year crime committed" (capitalization omitted) for both counts should have been the year 2016.  We direct the trial court to correct the clerical error with respect to counts 1 and 2 in the abstract of judgment.  (See *People v. Jones* (2012) 54 Cal.4th 1, 89.)

### III.  DISPOSITION

The judgment is affirmed.  The trial court is directed to amend the abstract of judgment to state the "year crime committed" (capitalization omitted) for counts 1 and 2 as "2016."  The trial court clerk shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

_____
Danner, Acting P. J.

WE CONCUR:


_____
Wilson, J.


_____
Bromberg, J.


**H051328**
***People v. Trivino***